PETER VAN WAGONER, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

Submitted December 7, 1901—Decided February 24, 1902.

1. The proceedings touching the letting of a contract and the other requisites preliminary to constructing a sewer in the street of a city will not be set aside on *certiorari,* sued out by an abutting landowner who has had legal notice of such proceedings, but has not taken any steps to object until the contract for the work has been let and the work thereunder completed and the assessment for benefits made.

2. The confirmation by the Circuit Court of an assessment for benefits will not be reversed upon a question of fact upon the application of parties having notice and an opportunity to be heard, when there are facts in the record returned to sustain the finding of the court that the assessment was laid according to the peculiar benefits received from the improvement.

3. The fixing of a special amount of benefits for each lot is not an objectionable method of assessment if it appears that the amount so fixed was determined upon the basis of the peculiar benefit received by each lot from the improvement.

4. The act entitled "A further supplement to an act entitled 'An act to authorize cities to construct sewers and drains and to provide for the payment of the cost thereof,' approved March 8th, 1882," which supplement was approved March 11th, 1893, is not unconstitutional because of a provision which permits a city, when constructing a sewer, to lay the necessary pipe for house connections from the sewer to the curb line of each abutting lot and which authorizes the charging of the whole cost thereof upon the abutting premises.

5. A requirement for a sewer connection with a dwelling on premises abutting on a sewer in a city is within the power of the local authorities under the laws of this state governing sanitation and the public health, and this requirement may be anticipated for municipal convenience and as a necessary police regulation at the time the sewer is constructed.

6. A statute conferring upon cities the right to assess the whole cost of the connection with the sewer in a street in front of an abutting landowner is not an exercise of the power of eminent domain or the taking of private property for public use without just compensation, but is within the power of the legislature as an incident of the police power of the state.

---

On *certiorari* to remove an assessment for benefits (confirmed by the Circuit Court of the county of Passaic) for the construction of a sewer through North Fifth street and Cliff street, from Temple street to Rip Van Winkle avenue, in the city of Paterson.

Before Justices VAN SYCKEL, FORT and GARRETSON.

For the prosecutor, *John B. Humphreys.*

For the defendant, *Michael Dunn.*

The opinion of the court was delivered by

FORT, J. This writ brings up an order of the Circuit Court of Passaic county confirming a report of commissioners appointed by the court to assess benefits for the construction of a sewer through North Fifth street and other streets in the city of Paterson. The proceedings were taken under an act

entitled "An act to authorize cities to construct sewers and drains and to provide for the payment of the cost thereof," approved March 8th, 1882, and its supplements. *Pamph. L., p.* 60; *Id.* 1893, *p.* 230.

The return of the writ shows the proceedings in regular form for the appointment of the commissioners by the Circuit Court and their appointment, sessions and report. Upon the presentation of the report a rule to show cause why the report should not be confirmed was granted and served upon all objectors. Upon the rule a hearing was had and testimony taken before the court and counsel heard thereon and the report confirmed. The prosecutor appeared in that proceeding. The writ in this case was not sued out until the work of sewer construction was completed and all the proceedings just recited had been taken. The prosecutor had legal notice of all the steps as they were taken, not only by publication, as provided by statute, but he admits that he also had actual notice thereof. Under such a state of facts he will not be heard to question any of the preliminary proceedings leading up to the assessment. *Hildreth* v. *Rutherford,* 23 *Vroom* 501; *Wilkinson* v. *Trenton,* 7 *Id.* 499.

But an examination of the record also makes it clear that the assessment for the sewer construction proper, as contradistinguished from the curb or house connections, was made upon a correct basis. The principle upon which the assessment was laid is certified by the commissioners to be according to the peculiar benefits of each lot or parcel of land, and the Circuit Court, after hearing evidence upon that point, including an examination of the commissioners, found that the assessment had been so made. This finding of fact will not be reviewed here. Whether the assessment was laid by the commissioners according to the peculiar benefits received was the very question at issue before the Circuit Court upon the rule to confirm—a question over which that court had jurisdiction and upon which it was required to pass. In such a case the rule is that where the facts are found by a trial judge, and there is evidence to sustain such finding, this court will not review his conclusions thereon. *City of Eliza-*

*beth* v. *Hill,* 10 *Vroom* 555; *Blackford* v. *Plainfield Gas Co.,* 14 *Id.* 438, 440; *Brewster* v. *Banta,* 37 *Id.* 367.

It was also contended that the property of the prosecutor was a large plot of ground and that it had been assessed as though in city lots. 'Under the proof there was no error in this. The city had assessed it so for some time for taxes, and the prosecutor had paid without objection. Upon the tax maps of the city the property is plotted into city lots. On the opposite side of the street from the prosecutor's property the lots are twenty-five by one hundred feet and built upon, and the character of the adjacent property is fixed. *Muller* v. *Bayonne,* 26 *Vroom* 102.

A plot of land may be treated, as divided into city lots, and assessed accordingly. *Minnesota* v. *Lewis Co.,* 72 *Minn.* 87.

The remaining question is more difficult of solution. The supplement of March 11th, 1893, above cited, authorizes a city, when building a sewer, to construct the necessary house connections from the sewer to the curb line of the lots fronting on the street, and to charge the costs and expenses of such house connections to the lots particularly benefited thereby and to assess the same at the time of assessing for the sewer proper. It is contended that this act is unconstitutional, in that it authorizes an arbitrary assessment of the cost and expenses irrespective of benefits.

We believe this is the first time this question has been raised in this state, and 'our research shows little reference to the subject elsewhere. We have been unable to see in what respect a statute conferring upon cities the right to assess the whole cost of the connection with a sewer in a street in front of an abutting landowner is an exercise of the right of eminent domain or the taking of private property for a public use without just compensation.

The requirement for connecting dwellings, or for the preparation for the connection of prospective dwellings, or other buildings to be occupied by persons, with a sewer in a highway, is an important sanitary regulation in cities in these modern days, and; essential to the public good and the preservation of the public health. It is within the power of the

local authorities, under our health laws, to require sewers to be built in streets and to compel connection therewith, at the expense of the abutting owner, and to cause the removal of cesspools and the like from abutting premises. The right to pass and enforce ordinances for these purposes is frequently authorized by statute, and is a part of the police power of the state for the preservation of the public health, and has never been questioned.

In *Cooley Tax.* (*1st ed.*) 399, that learned writer says: "There seems to be no legal impediment to a requirement, under the police power, that lot owners in cities and villages shall be at the expense of constructing that part of the public sewer in front of their respective premises." Again, in a later edition (at *p.* 590), he says: "The purpose to be accomplished is of that peculiar nature that the duty to provide for it seems intimately associated with the ownership of adjacent property—the value of which will be increased and the use facilitated by means thereof; and it is therefore within the competency of the legislature to impose upon the owners of such property the duty to make provision for it."

While it is recognized as settled in this state that the cost of public streets and other municipal improvements can only be assessed upon abutting property owners to the extent of the benefits conferred, it is still held with us that the whole cost of sidewalks may be assessed upon abutting property irrespective of benefits. *Van Tassel* v. *Jersey City,* 8 *Vroom* 128.

The cost of gutters may also be so assessed. *Robins* v. *New Brunswick,* 15 *Vroom* 116.

Upon principle it is difficult to distinguish between the construction of sidewalks or gutters at the expense of the owners of abutting property and the cost of sewer connection therewith.

The Court of Errors and Appeals, after many decisions to the contrary by this court, finally declared that, under our constitution, it was not within the power of the legislature to lay an arbitrary assessment of a specific part of the cost of a public improvement upon an abutting landowner. *Tide-*

*water Co.* v. *Coster,* 3 *C. E. Gr.* 518; *Agens* v. *Newark,* 8 *Vroom* 415.

The principle of these cases should not be extended beyond their clear import. Since they were delivered it has never been held that the rule therein enunciated was applicable to sidewalk assessments; nor do we see why that rule should be applied to sewer connections. Such connections are strictly for the benefit of the abutting owner. They increase the value of his property. So far as we know every city requires the owner of property, by ordinance or custom, to pay the whole cost of making sewer connections, and usually charges a sewer tap or license fee in addition.

If it be conceded that the legislature has the power to authorize a municipality to require that a connection be made with a sewer at the expense of the owner, it must follow that a statute permitting the municipality to do the connecting itself, at its convenience, is also constitutional. Whenever it is done, or by whatever authority, the whole benefit accrues to the abutting land. It is common knowledge that the difference in value between a property connected and one not connected with a sewer in a city is far beyond the cost of such connection.

The preamble of the act of 1893 recites the known fact that "after sewers are laid in the streets of cities such streets are frequently opened and torn up for the purpose of making house connections with such sewers." To obviate this nuisance the statute of 1893 was passed. It reduces the cost of connection to the abutting owner. It increases the value of his property. It prevents constant annoyance to the traveling public by street obstructions. It protects the pavement in front of his premises. It is useful and judicious legislation. It takes none of his property for public use, but, by public act, adds to its value. Every possible intendment should be given to sustain such legislation.

The order of the Circuit Court confirming the assessment is affirmed.