No. 28,643.

GEORGE M. BAIRD and more than fifty others, *Appellants*, v. THE CITY OF WICHITA, *Appellee*.

(276 Pac. 77.)

Opinion filed April 6, 1929.

*L. C. Gabbert,* of Wichita, for the appellants.

*A. V. Roberts, Vincent F. Hiebsch* and *Charles A. Springer,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by a resident taxpayer to enjoin the city of Wichita from broadening the paving on Central avenue

to more than twice its present width and from subjecting plaintiff's property on Central avenue to special assessments to pay for such improvement.

Central avenue is one of the principal streets of the city of Wichita. It is about four miles long and runs east and west through the city, connecting on the east with an improved highway which leads to an aviation field near by, and to an agricultural and oil-producing district further on. On the west by various cross streets it connects with Douglas avenue, which is the principal street in Wichita and which parallels Central avenue and connects with the leading highway out of town on 'the west. Central avenue was paved eight years ago to a width of 26 feet, and plaintiff's residence and those of taxpayers who reside on that street are subjected to annual assessments to pay for this improvement. Eight such annual assessments have been paid and two more are yet to be paid. The city now proposes to tear up the curbing of this eight-year-old paving and put down additional paving to a width of fifteen feet on each side of the existing pavement, so that the widened pavement will be 56 feet instead of its present width of 26 feet.

Plaintiff alleged that the state law and the city ordinances under which the city was undertaking to act were void, and that the threatened subjection of his property to special assessments to pay for such improvement was an invasion of his rights under the federal and state constitutions.

Plaintiff was defeated and appeals.

The statute under which the city set about this work reads:

"That the governing body of any city of the first class having a population of more than ninety-five thousand may by ordinance declare any street within said city that connects two business portions of said city or is a main thoroughfare to be a business or traffic street. And whenever any street is so declared to be a business or traffic street the governing body is empowered to grade, curb, gutter, pave, macadamize, or regrade, recurb, regutter, repave or remacadamize, any such business or traffic street by resolution; and the fact that said street has been declared to be a business or traffic street shall authorize the governing body to improve said street as above provided by the passage of a resolution and without the formality of a petition and any protest that may be filed by parties affected thereby may be disregarded by the governing body, and the cost of said improvement shall be taxed against the property liable therefor in like manner as though a petition had been legally and regularly filed requesting said improvement. And the fact that the governing body shall pass the ordinance declaring said street to be a business or traffic street shall be final and conclusive." (R. S. 13-1041.)

Pursuant to this statute the city commission of Wichita enacted an ordinance declaring Central avenue to be a main thoroughfare and traffic street, and followed this with a resolution and ordinance—

"SECTION 1. That it is hereby declared necessary to excavate, curb and pave Central avenue . . .

"The existing curb and gutter to be removed and additional pavement, fifteen (15) feet in width, constructed on either side of the present pavement, making a total roadway of fifty-six (56) feet between curbs. . . .

"SEC. 2. The cost of said improvement provided for in section 1 hereof, when ascertained, shall be at the cost of the owners of the land liable for special assessment therefor, which special assessment shall be levied to pay the cost of said improvement as by law provided."

Plaintiff contends that the statute (R. S. 13-1041) quoted above is unconstitutional for various reasons: Because it creates an arbitrary classification of cities where the relatively few taxpayers residing on main thoroughfares or traffic ways are subjected to special assessments and taxation for public improvements of no particular concern to them, and that there is no justification for the singling out of the relatively few in his situation to bear this onerous burden, and that the widening of the pavement of Central avenue from 26 feet to 56 feet is of no benefit to persons in his situation, and that the avowed purpose of the statute "to connect two business portions of said city" is a public purpose for which the general body of taxpayers should pay and not the limited few, like plaintiff, whose homes happen to be located on the street thus dedicated to the larger public use of a traffic street.

While it is quite true that neither the legislature itself nor its creatures, the municipal corporations of this state, can arbitrarily cast an undue proportion of the burdens of government upon one group of taxpayers while other groups in not dissimilar situations are shielded from such burdens, yet exact equality is not a prerequisite to the validity of a statute or city ordinance pertaining to assessment and taxation. In 6 R. C. L. 380, 381, it is said:

"A classification having some reasonable basis does not offend against the federal constitution merely because it is not made with mathematical nicety, or because in practice it results in some inequality. The principle of equality necessarily permits many practical inequalities, and classification is not invalid because not depending on scientific or marked differences in things or persons or in their relations. It is not essential that there should be a logical appropriateness of the inclusion or exclusion of objects or persons involved in a classification. . . . It is also unquestioned but that legislative classification may in many cases properly rest on narrow distinctions."

Again it is said:

"In the exercise of its power to make classifications for the purpose of enacting laws over matters within its jurisdiction the state is recognized as enjoying a wide range of discretion. The question of classification is primarily for the legislature, and it can never become a judicial question except for the purpose of determining, in any given situation, whether the legislative action is clearly unreasonable. Whenever the power to regulate exists, the details of the legislation and the exceptions proper to be made likewise rest primarily within the discretion of the state legislature. Before a court can interfere with the legislative judgment, it must be able to say that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. When the classification in a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. The courts cannot require the legislature to specify its reason for the classification, but they will always presume that the legislature acted on legitimate grounds of distinction, if any such grounds exist." (6 R. C. L. 384.)

In the case at bar no particular benefit to plaintiff's property by the doubling of the width of the pavement was shown because a demurrer to plaintiff's evidence was sustained and the city was not called upon to adduce evidence on that point, but it may be assumed that the added improvement to Central avenue by doubling the width of the paving will have the usual sequel which attends such enterprise in our rapidly developing metropolitan centers—a sharp advance in the value of property fronting on that street. Nothing is more common in this state and in this country than the fact that when a straggling outlying residence street in a growing town is brought within the area of its expanding business activities the town lot values on that street multiply many hundredfold in a decade or less. Of course, this increment does not always nor immediately occur, but it is such a common experience and happens so frequently that a court cannot say that a classification of assessment districts in our larger cities cannot be predicated on such a basis. In other words, we cannot say that a statute and city ordinance (6 R. C. L. 403; 19 R. C. L. 761, 762) which proceed on such an assumption of fact infringe either the constitutional inhibition against unrestricted grants of power of assessment and taxation to cities (Kan. Const., art. 12, § 5) nor the inhibitions of the fourteenth amendment. In *Chicago, M. & St. P. R. Co. v. Janesville,* 137 Wis. 7, 28 L. R. A., n. s., 1124, Chief Justice Winslow quite pertinently observed that it is not altogether nor in every case a prerequisite to the validity of a special assessment on property that the improvement for which

that assessment is made shall especially benefit the property assessed. He said:

"It is well settled that assessments against adjoining property are not limited to benefits received, where such assessments are properly made under the police power. Thus, the court has held that the entire cost of a sidewalk may be properly assessed against the adjoining lot without reference to or ascertainment of actual benefits. (*Hennessy v. Douglas County,* supra; *Lisbon Ave. Land Co. v. Lake,* 134 Wis. 470, 113 N. W. 1099.) In the last case it was held that, inasmuch as the presence of a defective and dangerous sidewalk constituted a serious public inconvenience and danger, the city might, under the police power, be clothed with the right to build or repair it at once without notice, and to charge the entire expense to the abutting lot upon which it stands, regardless of the question of the amount of benefit actually conferred. . . . The decisions are quite unanimous upon this question, and may be found collated in 2 Cooley on Taxation, 3d ed., pp. 1128-1130. Upon the last-named page Judge Cooley proceeds as follows: 'There seems to be no legal impediment to a requirement under the police power that lot owners in cities and villages shall be at the expense of constructing that portion of the public sewer in front of their respective premises'—citing *Van Wagoner v. Paterson,* 67 N. J. L. 455, 51 Atl. 922. See, also, *Gleason v. Waukesha County,* 103 Wis. 225, 79 N. W. 249." (p. 12.)

See, also, the excellent note to the case just cited in 28 L. R. A., n. s., 1124 *et seq.;* also, 6 R. C. L. 403; 19 id. 761; 25 id. 86, 129 *et seq.*

Another objection to the act is based upon its being limited to cities of more than 95,000 population, but that classification is manifestly not unreasonable. Under the inhibitions of our state constitution it was and is impossible to confer corporate power upon a single city by special act (art. 12, § 1), yet of necessity our leading metropolis, Kansas City, does require much legislative attention not demanded by smaller municipalities, so a classification of cities is resorted to, quite properly, which satisfies the constitutional requirements of article 2, section 17, and article 12, section 1, although but one city may come within the legislative classification at the time the statute is enacted. This was precisely the situation when R. S. 13-1041 was enacted in 1921. At that time only Kansas City had more than 95,000 population. But now the city of Wichita has grown into the same class, and doubtless Topeka will attain thereto ere long. With the passing years there is no reason to doubt that other Kansas towns will reach the same standard. In *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781, where the validity of a statute was challenged on the ground that it was applicable to but one city, and therefore special legislation, this court held:

"The matter of the method of providing for the cost of street improvements is one with relation to which cities may reasonably be divided into classes upon the basis of population.

"A law for the government of cities of a certain population is not rendered special in its operation by the fact that there is at the time only one city in the state of the size designated." (Syl. ¶¶ 3, 4.)

In the opinion it was said:

"That for many purposes the classification of cities according to population is a natural and proper one is clear, and we think has never been doubted. The statutes providing for municipal government in this state have always proceeded upon the theory that a system adapted to a small town might not be suitable for a larger one. . . .

"Granting the reasonableness of the principle of classification, its application rests with the legislature and is not subject to judicial review, although an extreme case could perhaps be imagined in which a court would be justified in holding that an ostensible classification upon the basis of population was only colorable, its real purpose and effect being to limit the application of an act to a single community or group of communities, not distinguishable from others by any differences having relation to the subject matter involved. Counsel for plaintiff contend that the present instance is such a case. Judicial notice is of course taken that Kansas City is now the only city in Kansas having over 50,000 inhabitants. This is not determinative of the matter, however, for it is not only conceivable and probable but practically inevitable that other cities in the state will in time attain that size. As was said in *The State v. Downs,* 60 Kan. 788, 57 Pac. 962: 'An act general in its provisions, but which can presently apply to only one city on account of there being but one of requisite population or other qualification, but which was designed to, and can in all substantial particulars, apply to other cities as they become possessed of the requisite population or other qualification, cannot be regraded as a special act.' (p. 793)." (p. 725.)

See, also, *Clarke v. Lawrence,* 75 Kan. 26, 33, 88 Pac. 735; *Railway Co. v. Cowley County,* 97 Kan. 155, 157, 155 Pac. 18.

To support the contention that the classification of cities of the first class having a population of more than 95,000 from other cities of the first class of less than that population is altogether arbitrary and without reasonable basis, attention is called to R. S. 13-1037 to 13-1040, enacted at the same session of the legislature, where cities of the first class having more than 45,000 and less than 95,000 population are given similar power to repave or otherwise improve the city streets without petition of the affected taxpayers and against their protest, and in which statute the cost of the improvement is apportioned between the city at large and the abutting property, the city to pay one-third of the cost and the owners of abutting property the other two-thirds. But that does not constitute

such a great difference in the burden imposed on the abutting property owners in these towns of the larger and smaller population as superficially appears. In the cities of smaller population, while one-third of the whole cost of the improvement is to be paid by the city at large, yet in computing that cost the paving of the street intersection is not segregated. (*Weigand v. City of Wichita*, 111 Kan. 455, 207 Pac. 651.) In the act under present scrutiny the city at large pays the cost of paving the intersections, and the abutting property is only specially charged with the cost of the improvement within the block.

It is also contended that the resolution and ordinance concerning this improvement are broader in their terms than the statute itself. We think not. There may be more than one main thoroughfare through a city, and as our cities continue to grow several thoroughfares will be a necessity. It is a matter of common knowledge that the increasing congestion of traffic in the larger cities is one of the chronic problems of municipal government, and many devices are being used to deal with it, including the rather drastic one of requiring all traffic on certain streets to move in one direction only. In this, as in many other respects, the police power expands as necessity compels.

Another objection to the resolution and ordinance which make a traffic street out of Central avenue is that Central avenue does not in fact connect two business districts of Wichita. Somebody has to determine that fact and the legislature has said that the city authorities may do so, and has also declared that the city government's finding to that effect is conclusive.

The other arguments against the validity of R. S. 13-1041 and the resolution and ordinances based thereon have had our careful attention, but need no further discussion.

The judgment is affirmed.

HUTCHISON, J., dissenting.