No. 29,442.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, as Attorney-general, etc., *Plaintiff,* v. WILL J. FRENCH, as Auditor, etc., *Defendant.*

(286 Pac. 204.)

Opinion filed April 5, 1930.

*William A. Smith,* attorney-general, for the plaintiff; *L. S. Harvey,* city attorney, *A. H. Skinner, John O'Brien,* assistant city attorneys, and *William Drennan,* of Kansas City, of counsel.

*W. C. Ralston,* of Topeka, for the defendant.

*Thomas A. Pollock,* of Kansas City, as *amicus curiæ.*

The opinion of the court was delivered by

JOCHEMS, J.: This is an original proceeding in mandamus brought on relation of the attorney-general against the state auditor, seeking a writ to compel him to register bonds in the amount of $69,200 issued by Kansas City, Kan., under the provisions of chapter 132 of the Laws of 1929. At the time the bonds were tendered to the state auditor for registration there was pending in the district court of Wyandotte county an injunction proceeding asking that the city be enjoined from issuing bonds under the act, on the ground that the law was unconstitutional. Under these circumstances, being confronted with the pending litigation involving the constitutionality of the law, the state auditor deemed it unwise to register the bonds until final disposition of the action in the district court. Upon his refusal to register the bonds this action was brought.

The principal contention of the defendant is that section 1 of the act violates the requirements of section 17 of article 2 of the constitution of the state of Kansas. Section 1 of chapter 132 of the Laws of 1929 reads:

"That the governing body of any city of the first class in the state of Kansas

now having or hereafter acquiring a population of more than 115,000 inhabitants and located in a county having an assessed valuation of less than $190,-000,000 shall have powers by ordinance duly passed by a majority vote of said governing body, to designate and establish certain streets or avenues in said cities as main traffic ways."

Section 17 of article 2 of the constitution of the state of Kansas reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The defendant argues that the act is a special one and does not operate uniformly throughout the state. It is pointed out that according to the 1929 census the population of Kansas City, Kan., is 118,159 and the assessed valuation of Wyandotte county is $166,-902,596; that for the same year the figures show Wichita as having a population of 108,117, and Sedgwick county an assessed valuation of $209,561,686. It is therefore argued that when Wichita reaches a population of 115,000 the act cannot apply to it because Sedgwick county already has an assessed valuation of more than $190,000,000, the maximum specified in the act.

Does it necessarily follow that the law is a special one and not of uniform operation throughout the state?

The case of *Railway Co. v. Cowley County*, 97 Kan. 155, 155 Pac. 18, considered an act under which the classification was based both upon population and assessed valuation. The court said:

"Under the provisions the rates decrease as the valuation ascends, but it is provided that when the population exceeds thirty thousand and the valuation is less than seven millions an increased rate may be levied. It is insisted that this feature of the law renders the act inoperative. A classification on the basis of population and on valuations is frequently made and is sustained where it is based upon substantial distinctions which are reasonably germane and pertinent to the subject matter. (*Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781.) If there is an essential difference between counties having a large population and a low valuation, and those counties where the population is more nearly in proportion with the valuation, then it may be said that there is a reasonable basis for the classification. It is not easy to find an absolutely just basis for taxation, but it is generally recognized that equality of taxation can only be attained by classification." (p. 156.)

Further on the court said:

"Is there a substantial distinction for the classification that has been made

for counties which have a great number of people and a small valuation of taxable property? It appears that Cowley county had a population of about thirty-four thousand and that the assessed valuation of the property was less than seven millions. It is well known that the salaries of officers increase as the population of a county increases and also that other expenses of government are augmented as the county becomes more populous. This condition then appears to afford a reasonable basis for a classification so that counties of that class may be able to meet the general expenses under the prescribed rates.

"It is said that the fixing of the limitations of population at thirty thousand and the valuation at seven millions is arbitrary and that there is little reason for a different rate in counties where the population is thirty thousand instead of twenty-nine thousand, or the valuation is a little less than seven millions instead of a little more. It may be that there is little difference where the population is a few more or less than the number fixed, or a little more or less in the valuation than that prescribed by the act; but if there is a real basis for a distinction where the population is high and the valuation low it devolves upon the legislature to determine where the limitation shall be placed, and if not obviously unreasonable their determination will be valid. In such a case the limitation must be placed somewhere, and it belongs to the legislature to decide what the necessities of the municipalities are and to fix the line where the limitation shall be placed." (p. 157.)

Again, on page 158, the court said:

"The function of the court is not to decide whether the classification is the wisest or the best that could be made, but only to inquire whether it rests on a substantial basis and is germane to the purposes of the law. The court can go no farther than to decide whether the legislature has kept within the limits of the constitution."

In *State, ex rel., v. Russell,* 119 Kan. 266, 237 Pac. 877, this court passed upon an act classifying counties upon the basis of population, and in the opinion the court quotes from *State v. Downs,* 60 Kan. 788, 57 Pac. 962, as follows:

" 'An act general in its provisions, but which can presently apply to only one city on account of there being but one of requisite population or other qualification, but which was designed to and can in all substantial particulars apply to other cities as they become possessed of the requisite population or other qualification, cannot be regarded as a special act.' " (p. 267.)

On page 268 the court continued:

"The classification of the statute under consideration is based on population. The statute may now apply to only one county; next year it may apply to two; in the future it will apply to any county which comes within its provisions. For that reason the statute is general and operates uniformly in all counties to which it applies. It does not violate section 17 of article 2 of the constitution of this state."

See, also, *Baird v. City of Wichita*, 128 Kan. 100, 276 Pac. 77.

In the instant case it cannot be said that because the act now applies to only one city in the state that it cannot operate uniformly throughout the state as to all cities coming within its classification and to which it applies. The contention that the law can only apply to Kansas City, Kan., is not tenable. While it is the only city to which it now applies the act under consideration will apply to other cities as they become possessed of the requisite population and the counties in which they are situated meet the requirements as to valuation. It does not necessarily follow that it cannot apply to Wichita when that city attains a population of 115,000 because at the present time Sedgwick county has an assessed valuation of more than the maximum authorized by the statute. It was suggested in the oral argument that Sedgwick county has oil fields and that its valuation has thereby been greatly increased. It is a matter of common knowledge that oil pools become exhausted in time, and it is entirely conceivable, therefore, that the valuation of the property in Sedgwick county may in the future shrink to $190,000,000. Again, the fact that the act does not apply to a particular city which possesses one of the qualifications but not the other does not render it unconstitutional. It is sufficient if the statute is general and operates uniformly upon all cities which meet its requirements and come within its classification.

Defendant contends that the classification made by the statute constitutes "unreasonable, unauthorized and arbitrary limitation on the scope and application of the act." The legislature may well have had in mind that as to cities of 115,000 or more inhabitants, situated in counties having more than $190,000,000 valuation, it would in time, whenever the necessity arose, create still another classification. It may well have had in mind that as to the so-called arterial traffic ways in cities so situated it would be advisable and proper to impose on the county at large a part of the burden of improving such traffic ways. The conditions with reference to the classification which it desired to make were solely matters for legislative determination. At any rate, in view of the foregoing, we conclude that the legislature acted on legitimate grounds of distinction in this instance as was pointed out in *Baird v. Wichita*, supra. We determine, therefore, that the act in question does not violate section 17 of article 2 of the constitution of the state of Kansas.

We have also examined further contentions of the defendant that the act under consideration, chapter 132 of the Laws of 1929, violates section 1 of article 2, section 1 of article 3, section 1 of article 12, and section 16 of article 2 of the constitution of the state of Kansas, and we conclude that it does not violate any of these provisions of the constitution.

It is therefore ordered that judgment be entered in favor of the plaintiff and the writ of mandamus allowed as prayed.

HARVEY, J., not sitting.