No. 31,290

THE KANSAS CITY SOUTHERN RAILWAY COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE, and HOMER L. CLINE, County Treasurer, etc., *Appellees*.

(27 P. 2d 220.)

Opinion filed December 9, 1933.

*Al. F. Williams, Don H. Elleman,* both of Columbus, *Frank H. Moore, Cyrus Crane* and *A. F. Smith,* all of Kansas City, Mo., for the appellant.

*C. E. Shouse,* county attorney, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover taxes for the year 1930 which the plaintiff railway company paid under protest to the county treasurer of Cherokee county.

Plaintiff's petition stated the requisite facts to develop the pertinent issue of law. It was alleged that in 1930 Cherokee county had 35,000 population and an assessed valuation of $34,255,579. A levy of 2.81 mills on the dollar was imposed for general purposes, while according to plaintiff's interpretation of the pertinent statute (so far as it is valid) the maximum levy authorized was 1.37 mills. The excess levy resulted in an exaction on plaintiff's property assessed at $350,047 in the sum of $504.07, which it paid, and for the recovery of which it prayed judgment.

Defendant's demurrer to plaintiff's petition was sustained, and plaintiff appeals, contending that a certain provision of the statute (italicized herein) under which the defendant board of county commissioners assumed to levy the tax of 2.81 mills for general purposes was unconstitutional, uncertain and unworkable. It reads (R. S. 79-1911):

"In any county which has an assessed valuation for the current tax year in excess of one hundred million dollars the levy shall not exceed one and six-tenths mills: *Provided, That in counties having a population of 35,000 or more the limitation of this chapter shall not prevent raising an amount for current expenses of the county equal to what might have been lawfully raised upon the assessed valuation for the year 1907.*"

It is plaintiff's contention that Cherokee county's authority to levy a tax for general revenue purposes is contained in R. S. 79-1904, which reads:

"In any county which has an assessed valuation for the current tax year of more than thirty million dollars and not in excess of thirty-one million dollars the levy shall not exceed one and forty-six-hundredths mills. In any county which has an assessed valuation in any amount in excess of thirty-one million dollars, up to and including forty million dollars, the maximum levy shall be determined by reducing the levy of one and forty-six-hundredths mills allowed upon a valuation of thirty-one million dollars, three-hundredths of one mill for each one million dollars in excess of thirty-one million dollars, and any rate of levy so determined shall be the maximum rate of levy for all assessed valuations which are fractions of the next higher one million dollars of valuation."

If plaintiff's contention is correct, the maximum levy for Cherokee county would be arrived at thus: The assessed valuation of the

county is $34,255,579. If it had $30,000,000 and not more than $31,000,000, the county could levy 1.46 mills on the dollar. For every additional million dollars' valuation a reduction of .03 mills must be made from 1.46 mills. Having over 3 million additional valuation, 3 times .03 mills or .09 mills must be deducted from 1.46 mills, which would leave a remainder of 1.37 mills as the maximum levy for Cherokee county. On this basis a levy of 1.37 mills would produce $46,930.14 for the county's general revenue fund.

But since Cherokee county has the comparatively large population of more than 35,000 inhabitants but only a property valuation of $34,255,579, why may it not have recourse to the proviso of R. S. 79-1911 which would enable it to raise a larger revenue for current expenses?

Before attempting to answer plaintiff's objections to the proviso, let us see how it would work if it is not subject to any infirmity. In 1907 the legislature set on foot what it hoped would become a fixed policy of assessing property at its actual monetary value instead of the old slipshod fashion of assessing property at variable but usually inconsiderable percentages of its actual value. The statute designed to effectuate that change was chapter 408 of the Laws of 1907.

Turning to the available statistics for Cherokee county for the year 1907, it appears that its assessed valuation for that year was $6,378,621. It also appears that in 1907 Cherokee county had a population of 39,369. Under that state of facts, Cherokee county in 1907 could have lawfully levied a general tax of 1½ per cent, which in turn would have lawfully raised the sum of $95,679.315. (Laws 1907, ch. 409.)

From the foregoing it will appear that if the proviso in R. S. 79-1911 is valid, the county could levy whatever number of mills on the dollar would produce $95,679.315 for general revenue purposes. The levy which the county did impose was 2.81 mills on the dollar, which will raise approximately that amount, $96,258.18, to be exact, but this slight variance is of no consequence; and indeed it is not complained of.

Now what is wrong, illegal or unconstitutional in the proviso of R. S. 79-1911? Certainly the objection that it is unworkable cannot be sustained. We have just worked it out as a problem in arithmetic of no great difficulty. What is there uncertain about the factors entering into the computation to arrive at the maximum

revenue of Cherokee county which might have been lawfully raised in that county upon its assessed valuation for the year 1907? This court has no means of knowing how accurate and complete the fiscal and statistical records of Cherokee county have been kept for the quarter of a century prior to 1930, but it seems that the litigants in this case found the requisite data without difficulty. The same data is available right here in the capitol. (First Report, State Tax Commission, 1908, p. 112; Sixteenth Biennial Report, State Board of Agriculture, 1907-1908, p. 777.)

It is earnestly contended, however, that the statute (R. S. 79-1911) in effect is an irregular and unconstitutional method of reviving the statute of 1907 which was superseded and repealed by the later statute of 1909 (ch. 245) the pertinent section of which is R. S. 79-1911. We must hold otherwise. The later statute does not avowedly undertake to resurrect the statute of 1907. It simply says to the board of commissioners of any county situated in respect to population and taxable property as Cherokee county, that if sufficient funds for general expenses cannot be raised under the authorized maximum levy of 1.37 mills (by R. S. 79-1904) then whatever levy is necessary to raise as much revenue as could have been lawfully raised in 1907 can be imposed.

Another objection to the tax as authorized by the proviso of R. S. 79-1911 is that it creates an arbitrary and unreasonable classification. Yet nothing is more common than the classification of counties upon population or upon assessed valuation or upon both of these factual bases. (*Railway Co. v. Cowley County,* 97 Kan. 155, 155 Pac. 18.) So long as the constitutional mandate (Const. art. 11, § 1) requiring that the rate of assessment and taxation shall be uniform and equal on all property within the taxing district is observed, the legislature has a broad discretion touching classification of counties and municipalities for purposes of taxation and prescribing the bases upon which such classifications can be made. (*Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234; *State, ex rel., v. Kansas City,* 125 Kan. 88, 262 Pac. 1032; *Baird v. City of Wichita,* 128 Kan. 100, 276 Pac. 77.)

A minor objection to the proviso in R. S. 79-1911 is that in the year 1907 (as in all other years) two different sets of figures pertaining to the county's assessed valuation were in existence—those pertaining to the assessed valuation for 1906 which would control until the assessment for 1907 was completed and available as a basis

of computation. However, the latter would be available long before the levy for county general expenses would be made (in August), so "the assessed valuation for the year 1907" referred to in R. S. 79-1911 clearly refers to the one made in 1907, not to the one made in 1906.

The other arguments urged against the judgment have been duly considered, but they present nothing requiring further discussion.

The judgment is affirmed.

HUTCHISON, J., not sitting.