No. 32,197

THE STATE OF KANSAS, ex rel. FRED R. WHITE, County Attorney of Wyandotte County, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, and T. F. RAILSBACK, *Defendants*.

(39 P. 2d 286)

■■■■■■■■

Opinion filed December 28, 1934.

*Fred R. White,* county attorney, for the plaintiff.

*O. Q. Claflin,* of Kansas City, for defendant T. F. Railsback.

*C. W. Trickett,* of Kansas City, as *amicus curiæ.*

The opinion of the court was delivered by

DAWSON, J.: The state brings this proceeding in quo warranto to determine the validity of a recent act of the legislature, and challenges the defendants' exercise of official powers under its terms. The statute reads:

"AN ACT relating to criminal procedure, and providing for grand juries in certain counties and the prosecution of public offenses by special prosecutors.

. . . . . . . . . . . . .

"SECTION 1. In counties having a population of more than one hundred thirty thousand and an assessed valuation of less than $160,000,000 a majority of the judges of the district court shall select and summon a grand jury to attend, during a part or all of the first term of said court, which commences after January 1 of such courts each year. Such grand juries shall have general inquisitorial power to inspect the records, books and documents of public officials and to subject such officials, their clerks and employees to examination in relation to their official transactions, records, books and documents, and may appoint accountants to assist them in the investigation of the transactions, records, books and documents of public officers for the purpose of ascertaining whether or not there has been any official misconduct in any public office, and shall have and exercise all of the powers and duties of grand juries under and in accordance with the laws of this state. Expense incurred by the employment of accountants shall be paid by the county.

"SEC. 2. A majority of the judges of the district court in such counties shall appoint a special prosecutor to represent the state before such grand juries and to prosecute indictments found by them. Such special prosecutor shall have, as prosecuting officer, full control over all cases or matters for the prosecution of which he is appointed, and have and exercise the same powers and duties as county attorneys as to such grand juries and in the prosecution of persons indicted by such juries. The county shall be liable to such special prosecutor for reasonable compensation for his services. Compensation for services rendered by such special prosecutors, in prosecuting on indictments found by such grand juries, shall be fixed by the court and taxed as a part of the costs

in such cases, and in case of conviction may be taxed in whole or in part against the defendant." (Laws 1933, ch. 220, effective March 14, 1933.)

The state's relator raises various objections to this statute, chief of which are these:

1. That the act is special and pertains only to Wyandotte county and could apply to no other; that a general act could readily have been formulated to deal with the subject matter; and in consequence the act violates section 17 of article II of the state constitution.

2. .That the act which creates the office of special prosecutor and provides that compensation for his services in prosecuting on indictments shall be fixed by the court and taxed as costs in cases where convictions result from his activities is a grave departure from the elementary requirement that criminal law and criminal procedure should have uniform operation throughout the state, and that it contemplates a denial of the constitutional guaranty of equal protection of the law to persons prosecuted and convicted under its terms.

Various other objections, some merely argumentative, are urged against the act, but it may be unnecessary to consider them.

Before considering the alleged infirmities of the statute we take space to notice and to disapprove a contention made on behalf of defendants—that the county attorney had no authority to bring this action. We must hold to the contrary. In governmental theory and by express statute the county attorney is the state's law officer and official relator in his county in respect to all matters of public concern where the state is or should be a participant in litigation. That the state has another law officer, the attorney-general, detracts nothing from what we have just said.

R. S. 19-702 provides:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested."

This statute, in effect, virtually clothes this officer with the powers of an attorney-general within his county, and this is nevertheless true although other statutes may create other officers, county counselors, city attorneys, assistant attorneys-general and the like, who may likewise prosecute or defend cases, civil or criminal, on proper occasion.

In State, ex rel., v. Doane, 98 Kan. 435, 440-441, 158 Pac. 38, where the constitutionality of a statute was challenged, it was said:

"Where the constitutionality of a statute is in doubt the state's law officer, its attorney-general or county attorney, may exercise his best judgment as to what sort of action he will bring to have the matter determined, either by quo warranto to challenge its validity (*The State v. Johnson,* 61 Kan. 803, 60 Pac. 1068); by mandamus to compel obedience to its terms (*The State v. Dolley,* 82 Kan. 533, 108 Pac. 845); or by injunction to restrain proceedings under its questionable provisions (*The State, ex rel., v. City of Neodesha,* 3 Kan. App. 319, 45 Pac. 122)."

See, also, *State, ex rel., v. City of Coffeyville,* 127 Kan. 663, 274 Pac. 258; and multiplied citations to the same effect will be found throughout our official reports.

Touching the first objection to the statute—that it can only apply to Wyandotte county because of the artificiality of its terms— a county having more than 130,000 population and an assessed valuation of less than $160,000,000, and the relator's claim that it cannot apply to any other county than Wyandotte, the state board of agriculture and the state tax commission have supplied the court with pertinent and instructive statistics for 1934 touching the three leading counties of this state, viz.:

| Counties. | Population. | Assessed valuation. | Area (in acres) |
|---|---|---|---|
| 1. Wyandotte | 141,449 | $118,105,496 | 99,977 |
| 2. Sedgwick | 127,582 | 179,951,008 | 644,869 |
| 3. Shawnee | 84,232 | 114,637,235 | 354,433 |

These figures make it rather obvious, we think, that it cannot be dogmatically declared that the statute can never apply to another county than Wyandotte. A slight increase in the population in Sedgwick county, and a ten per cent shrinkage in its assessed valuation—which might readily happen if or when its recent oil development should subside—would bring that county squarely within the terms of the statute. And it can hardly be predicted with confidence that the lapse of years will not bring Shawnee county into the same category, not to mention other important counties whose growth in recent years has been noticeably continuous.

Furthermore, unless we are to apply constitutional tests to statutes dealing with criminal law and criminal procedure more rigorously than we have been wont to do in respect to acts of the legislature dealing with miscellaneous civil matters, the relator's first objection to the challenged act is foreclosed by repeated decisions of this court. Thus, in *State, ex rel., v. French,* 130 Kan. 464, 286 Pac. 204, a bond statute was held constitutional which applied only to first-class cities in counties having a population of more than 115,000

and an assessed valuation of less than $190,000,000. According to the then current official statistics, the act could not apply to any city in any county except Wyandotte. The opinion cited earlier cases to the same effect. In *Kansas City S. Rly. Co. v. Cherokee County Comm'rs*, 138 Kan. 534, 537, 27 P. 2d 220, where the constitutionality of a taxation statute was drawn in question, it was said:

"Another objection to the tax as authorized by the proviso of R. S. 79-1911 is that it creates an arbitrary and unreasonable classification. Yet nothing is more common than the classification of counties upon population or upon assessed valuation or upon both of these factual bases. (*Railway Co. v. Cowley County*, 97 Kan. 155, 155 Pac. 18.) . . . The legislature has a broad discretion touching classification of counties and municipalities for purposes of taxation and prescribing the bases upon which such classifications can be made. (*Comm'rs of Ottawa Co. v. Nelson*, 19 Kan. 234; *State, ex rel., v. Kansas City*, 125 Kan. 88, 262 Pac. 1032; *Baird v. City of Wichita*, 128 Kan. 100, 276 Pac. 77.)"

Another observation touching special legislation may be pertinent here. The constitution does not positively forbid special legislation. The duty has been imposed on the courts to determine if a special act is necessary or whether the legislative purpose could be accomplished by a general act. (Const. art. 2, § 17.) And while this court has no disposition to suggest methods by which this constitutional inhibition might be circumvented, we would certainly not look less tolerantly on a fair and candid special enactment than on the characteristic rubbish with which we have to deal when powers and duties are conferred upon and restricted to governmental agencies under classifications which are both arbitrary and ridiculous. (See *State, ex rel., v. School District*, 140 Kan. 171, 34 P. 2d 102.) A county is a governmental agency and not a corporation as is a city, a railroad, or a private corporate entity, so that the conferring of governmental powers upon it does not fall under the ban of section 1 of article 12 of the constitution. (*State, ex rel., v. Comm'rs of Pawnee*, 12 Kan. 426, 439.) If the legislature should discover need for more governmental machinery in a county like Wyandotte, with its great density of population (over six times the density of Sedgwick) and its proximity to the still greater congested area just across the state line in Missouri, it would not be easy for the courts to hold that special legislation to accomplish that purpose could not be justified on such a basis. In *Harling v. Wyandotte County*, 110 Kan. 542, 204 Pac. 763, where the validity of an act authorizing the construction of a courthouse in

certain counties was under scrutiny, this court did not expressly say that the act was special, yet the opinion throughout dealt with the act as if it only concerned Wyandotte county because of the peculiar governmental problems arising there—in what then was and still is the most populous and highly congested metropolitan area in this state. Under the reasoning of that opinion it is apparent that if the enactment had simply directed the board of county commissioners of Wyandotte county to build a courthouse adequate to the needs of carrying on the local government it would have withstood the constitutional objections leveled against it.

The court holds that the statute is not subject to constitutional objection as special legislation.

The second objection to the statute is more serious. It contemplates that compensation for the services rendered by the special prosecutors shall be fixed by the court and taxed as part of the costs in the cases prosecuted by them, and where such prosecutions are successful such costs may be taxed in whole or in part against the convicted defendants.

It is quite obvious that this provision not only mars the uniformity of our criminal procedure, but it also creates a material difference in the substantive law of crimes and punishments in Wyandotte county (and such other counties as may hereafter fall into its class) from that which prevails throughout the state at large. This point is so well developed in the brief of counsel for the state that we quote therefrom:

"If a township officer violates a certain law in Shawnee county, and is unfaithful to his duties, and a grand jury is impaneled in Topeka and he is indicted, and after a trial lasting five days, convicted, the punishment would be as follows:

| | |
|---|---|
| Maximum fine | $500 |
| Court costs | 25 |
| Total | $525 |

But if a township officer in Wyandotte county commits the same offense and is indicted under this new grand-jury law, notice the penalty:

| | |
|---|---|
| Maximum fine | $500 |
| Court costs | 25 |
| Fees, special prosecutor five days at $100 per day [estimated] | 500 |
| Total | $1,025 |

thereby doubling the penalty.

"Let us make additional comparison. The general grand-jury law applies to

the entire state of Kansas. A grand jury may be impaneled under that law in Wyandotte county, independent and in addition to the mandatory grand-jury law enacted by the legislature of 1933. Suppose that a grand jury is by petition under the general law called for the December term of court and a township officer is indicted.

"In March we are compelled to have a grand jury under this new law. And suppose that another township officer is indicted for exactly the same offense as in the case of the December grand jury.

"Suppose these cases come on for trial the following April. The man indicted in December is tried by the county attorney, the case lasting five days, and upon conviction he is fined as follows:

| | |
|---|---|
| Maximum fine | $500 |
| Court costs | 25 |
| Total | $525 |

"Suppose the week following his conviction the officer indicted at the March term comes on for trial, and he is tried by a special prosecutor, and at the end of five days there is a conviction. His sentence would be as follows:

| | |
|---|---|
| Maximum fine | $500 |
| Court costs | 25 |
| Fees of special prosecutor, five days, at $100 per day [estimated] | 500 |
| Total | $1,025 |

"These cases would come before the same trial judge for sentence at the same time. Must he in one case impose a penalty the total of which is $525 and in the other case the total being almost double? Is this equal and just protection of life, liberty and property?"

The question of counsel quoted above must be answered in the negative. (12 C. J. 1187.) At whatever figure the special prosecutor fees might be fixed it would constitute an added penalty which could not be imposed on any similar convicted lawbreaker throughout the state. This added penalty would offend against sections 1 and 18 of the bill of rights and section 17 of article 2 of the state constitution; and would be a plain denial to convicted persons in Wyandotte county of the equal protection of the law afforded to all others in their situation within this state and guaranteed by the fourteenth amendment.

In view of this conclusion the resulting question intrudes: What effect does this manifest constitutional infirmity have upon the statute as a whole? Frequently the court can say with assurance that if the legislature had been apprised of the invalidity of some incidental feature of a legislative measure, it would have eliminated it and would have enacted the measure nevertheless. In such situations it becomes a judicial question to discover, if practicable, the

paramount legislative intent. (6 R. C. L. 121-132.) Thus in *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 Kan. 453, it was said:

"While it is undoubtedly true that a statute may be constitutional in one part and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute." (Syl. ¶ 1.)

In *Hardy v. Kingman County*, 65 Kan. 111, 68 Pac. 1078, where a statute, whose title and main purpose were to fix the fees and salaries of county officers, prescribed a penalty of $10 per day for each day's failure of any such officer to account for and pay into the county treasury a share of the fees collected, it was said:

"Assuming, but not deciding, that the provision contained in section 14 of chapter 131, Laws of 1897, imposing a penalty on the register of deeds of a money forfeiture of ten dollars per day to be paid to the county for each day's failure by him to account for and pay into the treasury one-half the fees collected by him, is unconstitutional, as being an attempt to divert the proceeds of fines for breaches of the penal laws from the common-school fund, such invalidity does not impair any other parts of the act, because the penal provision is not such an integral portion of the whole law as to be inseparable from it, and it may fall of itself without destroying the remainder." (Syl. ¶ 2.)

In *Telegraph Co. v. Austin*, 67 Kan. 208, 72 Pac. 850, where parts of a legislative enactment were concededly unconstitutional, the question under consideration was their consequent effect upon the remainder of the statute. The court held:

"When parts of a legislative act have been declared unconstitutional and void and the invalidity of the remaining parts is suggested, the general rule that all reasonable presumptions must be indulged in favor of the constitutionality of an act does not obtain. In such case it must be clear that it was the legislative intent that the remaining parts should stand as the law, independent of, and uncontrolled by, those provisions opposed to the constitution." (Syl. ¶ 2.)

In *State ex inf. v. Duncan*, 265 Mo. 26, where part of a statute was held unconstitutional, the Missouri supreme court discussed the effect of such an infirmity thus:

"The books are full of it and counsel on both sides cite cases decided by this court, and text-writers, showing under what circumstances an unconstitutional and therefore dead provision may be pruned from the main stem of a law without impairing the stem itself. . . . Briefly, the touchstone whereby a correct conclusion is to be reached will be found in correct answers to these

questions: Is the entire law built up around the unconstitutional proviso? Are all the provisions of the enactment inseparable, and so interwoven and connected as to be interdependent? Does the statute attempt to accomplish instead of two objects (one valid, the other invalid) only one object and that one invalid? Does the proviso furnish the inducement, the consideration, the legislative motive for the whole act? Is it apparent that but for the proviso the forty-fourth general assembly would not have enacted the law? With the proviso cut away is there left only an incomplete enactment, one not symmetrically rounded out, and, therefore, incapable of enforcement? If those questions must be judicially answered yes, then the whole act falls to the ground with the proviso—if no, then the law, bad in part, may be good in part; for the courts in this behalf do not apply the ideas shadowed forth in the metaphors of Paul and Solomon, where the one speaks of a little leaven that leaveneth the whole lump, and the other comments on the all-pervading and unsavory effect of dead flies in the apothecary's ointment." (pp. 45, 46.)

See, also, eighty-page note to that case in Ann. Cas. 1916D, p. 9, et seq.

In 6 R. C. L. 192 it is said:

"Although the courts may eliminate parts of an act as unconstitutional and sustain and give effect to the remaining portions, it is sometimes difficult to apply this process to penal statutes, because they are always construed strictly. Hence, the courts incline towards treating a penal statute as void in its entirety whenever one section or clause is clearly unconstitutional."

In recent years our legislature has sometimes included in its enactments an express declaration that if some part thereof shall be adjudged invalid it shall be judicially presumed that the legislature would have enacted the challenged statute without the unconstitutional matter, as in the industrial court act (Laws 1920, Sp. Sess. ch. 29, § 28) and in the insurance code (Laws 1927, ch. 231, § 2).

With the foregoing rules of statutory construction in view, it seems clear to a majority of this court that the scheme to have an annual session of a grand jury in Wyandotte county at which the regular prosecuting attorney would be supplanted by a special prosecutor, whose compensation should be paid in whole or in part by persons convicted pursuant to indictments found by such annual grand jury, was and is an inherent and vital part of the whole statute. What would be left of this statute if this scheme for paying the compensation of the special prosecutor should be judicially eliminated? Should we presume that some public-spirited lawyer would devote weeks of preliminary digging into the conjectured civil and criminal delinquencies of public officials and private persons in order to present them to this statutory grand jury without

assured prospect of compensation? In his answer defendant Rails-back, the special prosecutor who has thus far served under this statute, throws light on this subject. He attaches a schedule of the indictments found—for embezzlement, forgery, false pretenses, exaction of illegal fees, official misconduct, bribery, and the like, and pleads:

"That he did not solicit said appointment, but, on the contrary, he was drafted by a majority of the judges of the district court, and requested to render said public service; that he was not appointed until after the grand jury had been impaneled, and thereafter devoted his time continuously until and after said grand jury adjourned, working as of necessity he was compelled to work, both day and night, in order properly and efficiently to represent the state before said grand jury; and at the conclusion of his said labors, for reasonable compensation for such services, made a request upon the judges of the district court, who referred answering defendant to the board of county commissioners, which board ultimately allowed and paid to answering defendant the total and aggregate sum of $1,950 for his services covering a period of ninety days, plus the services of defendant's entire office and compelling him to suspend his private practice during that period of time. For that reason answering defendant has respectfully requested the judges of the district court to confer and agree upon a per diem basis of compensation for the trial of said criminal prosecutions in the district court as shown by the following letter, sent to each of said judges:

"SEPTEMBER 13, 1934.

"The Honorable, The Judges of the District Court,
      "Wyandotte County, Kansas.

"Sirs—Last March the judges of the district court paid me the unique and distinct compliment of selecting me from all of the excellent lawyers who practice at this bar, to be special prosecutor in connection with a grand jury which had been impaneled under the provisions of chapter 220, Laws of 1933. . . .

"The indictments are on file and the cases are ready for trial in the order in which the prosecutor shall desire to present them. I do not feel justified in entering upon the second phase of this work, that of trying these cases, without a definite understanding as to what compensation is to be paid. If there were but one or two matters it would not be of such importance, but the volume of business involved makes it necessary for me to request that a definite rate of compensation be established before I proceed further. I have thought of several ways in which this might be handled, but from a reading of the statute I am convinced a specific fee should be allowed in each case at its conclusion in the district court, and that the only workable way for us to arrive at an understanding ahead of the trials is to agree upon a per diem charge for each day in court. In order for me to maintain my office and furnish not only my personal services but all the facilities of my office for this work, having in mind the fact that the trial of this large number of cases will arrest the handling of any personal business in my office, I should be

paid for the trial of these cases at least the minimum fee provided by the Wyandotte County Bar Association of fifty dollars for each day or fraction of a day consumed in the trial thereof in the district court. I have proceeded in these cases up to this point without such an understanding and hoped that an arrangement would be made, but I feel that I must now say to you that unless such an arrangement can be made before I start with these cases next Monday, so I will know definitely what it is that I may look forward to, that I must ask you to excuse me from further participation in these trials, and select a successor."

In their answer the defendant board of county commissioners plead:

"(b) That the cost of said grand jury to Wyandotte county, in grand-jury salaries, stenographic fees, and special counsel fees allowed by the judges of the district court of Wyandotte county, was more than $5,000, all of which has been paid out of the general fund of the county, and that the defendant board of county commissioners has been informed that additional expense incident to the preparation of a transcript for the use of the state will be presented to the said board for payment.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"2. Defendant further admits that there was levied for the general fund of Wyandotte county for the year 1934, the maximum amount provided for by law, and defendant states that it was impossible to make further provision in said 1934 budget for anticipatory or probable expense incident to the trial of grand-jury indictments, on account of the uncertainty of the amount of such expense and the necessity of making provision in such budget for certain definite and fixed statutory obligations of the county.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Said defendant board of county commissioners denies that the defendant T. F. Railsback is demanding that the board of county commissioners contract or bind itself either to the said defendant T. F. Railsback for compensation for services in the trial of said grand jury indictments."

It is obvious, we think, that this statute cannot be made to operate without a special prosecutor. The present special prosecutor declares he cannot function without assurance of compensation. The operative interpretation of the language of the statute that "the county shall be liable to such special prosecutor for reasonable compensation for his services" is not taken seriously by the defendant board of county commissioners since their budget cannot be extended to meet it. This court, or a majority of it, are convinced that the legislature would not have given its sanction to this enactment except on the theory that a competent special prosecutor's services could be procured and his compensation taxed as part of the costs in cases prosecuted by him, and taxed "in whole or in part" against defendants convicted pursuant thereto.

The necessary conclusion is that the statute as a whole is subject to such constitutional infirmity that it cannot stand, and judgment is therefore entered in behalf of the state and against the defendants.

DAWSON, J. (dissenting in part): I agree with all that is said above except the ultimate conclusion—that the constitutional infirmity in the statute vitiates the whole of it. On that point I dissent.

HARVEY, J. (dissenting in part): I agree that in harmony with the reasoning of this court in some former cases the statute in question is not special legislation, albeit the reasoning is decidedly strained and highly technical. I further agree that had the statute been special, that is, had it provided for the grand jury in Wyandotte county, it would not necessarily be void for that reason; indeed, I would have liked it better had it done so. I agree also that the part of the last sentence of section 2 which provides the compensation of the special prosecutor "in case of conviction may be taxed in whole or in part against the defendant," is void for the reason that it authorizes a charge against a defendant, in case the indictment is found by such grand jury and prosecuted by the special prosecutor, which would not be imposed against him had he been prosecuted in the same county by the county attorney, or had the offense been committed in any other county of the state and prosecuted by the county attorney or the attorney-general. The provision, therefore, violates our constitution with respect to uniformity of our laws.

I do not agree that the invalidity of this provision renders the entire statute void. Clearly it is a separable provision—indeed, optional with the trial court—and applies to and affects only a detail of cost. The statute had a much broader purpose in view. It is a matter of common knowledge—so much so as almost to be notorious—that for several years complaints have been made by various citizens of Wyandotte county that the criminal laws of the state have not been efficiently enforced, and that responsible county officials have not been diligent in their enforcement. Echoes of these complaints have reached this court on more than one occasion, and what was presented here indicated they had been made to the attorney-general and to the governor. It is clear that some of the complaints so made were obviously groundless; the very statements of them so indicated. But of others, that cannot be said. The leg-

islature very prudently might provide to have them inquired into, and in a manner disconnected, in part at least, from the activities of other county officers. To me, that seems the obvious purpose of this statute, and that the matter of taxing certain special costs to defendants is an incident only. The special prosecutor does not look to the defendant in any case for compensation for his services. The statute makes it the duty of the county to pay the special prosecutor for his services. The fact that the county commissioners have not arranged for such an expenditure in their budget seems to me to be a trivial argument in opposition to the statute. There is no reason why the county commissioners should not make provision for the payment of this item of county expense the same as they would provide for any other county expense. The statute which places the duty on the county to pay such items of expense should not be declared invalid because the board of county commissioners neglected to make such a provision.

Although it may have but little bearing on the validity of this statute, I wish to suggest that the time and circumstances under which this action was brought, in my judgment, indicate, in part, the necessity for the statute. Had there been any substantial question as to the validity of this statute, any real merit in the contention that it was invalid, it was the duty of the county attorney or the attorney-general to bring the action promptly. It could have been done when the grand jury was first called, or the special prosecutor first appointed, as well as later. That was not done. The grand jury was convened, the special prosecutor was appointed, they worked for several weeks, at an expense to the county of about $5,000, which was paid. The jury found crime had been committed and returned a number of indictments. The defendants charged in the indictments were arrested. It was not until their cases were called for trial in district court, more than six months after they were indicted, that the county attorney conceived it to be his duty to bring this action, and it appears to have been done then on the solicitation of several attorneys representing the indicted defendants. The action smacks too much of a device of defendants to evade trial. Those citizens of Wyandotte county who have been contending—whether justly or not—that crime goes unpunished in their county, and that with all their efforts they are unable to get effective action, either through the responsible county officials or through the courts, will have this decision to point to in support of their contentions.