No. 23,590.

Ethel M. Harling, *Appellant*, v. David Buckland et al., Constituting the Board of County Commissioners of the County of Wyandotte, *Appellees*.

### SYLLABUS BY THE COURT.

1. Statutes—*An Act Authorizing the Erection of Courthouses in Certain Counties—Issuance of Bonds in Payment Therefor Without a Vote of the People—Act Constitutional.* Chapter 155 of the Laws of 1921, authorizing the board of county commissioners in counties having a population of 110,000 or over to construct or reconstruct a courthouse and in payment therefor to issue bonds of the county in a sum not exceeding $1,000,000, is not invalid for the reason that it authorizes the issuance of such bonds without requiring a vote of the people.

2. Same—*Certain Objections Mere Criticisms.* Certain objections to provisions of the act are held to be mere criticisms of the policy and wisdom of the law.

3. Same—*Act Not Repugnant to Section 16, Article 2, of the Constitution.* The act is not repugnant to section 16 of article 2 of the constitution on the ground that it does not contain sections of the former acts amended nor in express terms repeal them. In relation to the subject matter of the act, which is the building of courthouses in counties of a certain class, the statute is a code unto itself; former legislation on the subject of building courthouses has still a field for operation, the new act being merely supplemental and auxiliary thereto.

4. Same—*Act a General Law and Applies to a Class of Counties.* The act is general in form and applies to a class of counties, and therefore is not repugnant to section 17, article 2 of the constitution.

5. SAME — *County Authorized to Erect Courthouse.* Counties being mere agencies of the state for governmental purposes, the legislature possesses power to authorize a county of a certain class to assume and discharge a liability for the erection of a courthouse.

6. SAME—*Amount of Bonds to Be Issued—Not in Excess of Limitation Allowed by Law.* The fact that the amount of bonds authorized by the act in question may cause the indebtedness of the county to exceed one per cent of the assessed valuation does not render the act invalid because of the express provision in the act that none of the restrictions and limitations respecting the amount of county indebtedness contained in any former laws shall apply to or affect the issuance of bonds authorized by the act.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed February 11, 1922. Affirmed.

*T. F. Railsback,* of Kansas City, for the appellant.
*J. H. Brady,* of Kansas City, for the appellees.

The opinion of the court was delivered by

PORTER, J.:    The plaintiff, a taxpayer, brought this action to enjoin the board of county commissioners from constructing a courthouse and issuing bonds in payment thereof. The cause was submitted to the district court on the pleadings. The court refused to grant an injunction and rendered judgment in favor of the defendants. Plaintiff appeals.

The purpose of the action is to test the validity of chapter 155 of the Laws of 1921, which authorizes the board of county commissioners, in counties having a population of 110,000 or over, to construct or reconstruct a courthouse, and in payment therefor to issue without a vote of the people bonds of the county in a sum not exceeding $1,000,000.

There is no provision of the constitution requiring a vote of the people in order to authorize the issuance of bonds for the erection of public buildings (*Riley v. Garfield Township,* 58 Kan. 299, 303, 49 Pac. 85), and that disposes of the first objection to the act of 1921.

The second section of the act authorizes the board to employ an architect to prepare plans and specifications and superintend the construction work and to pay him out of the proceeds of the bonds issued. Plaintiff complains because no provision is made for selecting an architect who is a resident of this state; that there is no means provided for competition in his selection; and that no limit is fixed to the amount of his compensation. But all this amounts to a mere criticism of the policy of the law. The legislature saw fit to delegate a part of its legislative power to the board of county commissioners. Besides, if the act had made no provision for the appointment of an architect, the county board under its general

authority to manage the business affairs of the county could have proceeded in the same way the act provides; a taxpayer could not complain merely because the board appointed a nonresident or that there was no provision for competition in the selection.

It is contended that the act violates section 16 of article 2 of the constitution because it does not contain sections of former acts amended nor in express terms repeal them. The theory is that the legislature sought by this act to change the method of building courthouses generally in the state. The statute is not in that sense an amendment to any particular statute; and it repeals none, except in so far as some other statute might be considered in conflict or inconsistent with its provisions. (*Belleville v. Wells*, 74 Kan. 823, 88 Pac. 47, and cases cited in the opinion.) In relation to the subject matter of the act, which is the building of courthouses in counties of a certain class, the statute is a code unto itself. The general method of building courthouses is still definitely fixed by certain sections of the former statute; but the act of 1921 is the latest expression of the legislature respecting the building of courthouses in counties having a population of 110,000. The former legislation on the subject has still a field for operation; the act of 1921 is merely supplemental and auxiliary thereto. That there is no conflict between this and other legislation is apparent from the fact that the act of 1921 is not compulsory; it leaves the question whether Wyandotte county shall take advantage of its provisions to be determined by the board of county commissioners. Had the board not seen fit to proceed under the authority granted by this act·it could have proceeded to build a courthouse under the methods provided by former statutes.

That the county officials of a county with a population such as Wyandotte county contains shall be furnished adequate quarters in which to transact the public business and that provision be made for the suitable accommodation of the courts in such county and the preservation of the public records, are all matters of public interest which concern the people of the entire state. It is true that the erection of a courthouse sufficient to accommodate the needs of the county will especially benefit the people of the one county comprising the class embraced in the act, and for that reason the burden of the necessary expense very properly is cast upon the taxpayers of that county.

"If the obligations which the municipalities are required to assume and discharge are for institutions and necessities of purely public concern, and

Harling v. Wyandotte County.

for which taxes may ordinarily be levied, the power of the legislature in respect to them is supreme, and its determination, if reached by constitutional methods, is not subject to review." (*The State v. Freeman,* 61 Kan. 90, 91, 50 Pac. 959.)

Counties are mere agencies of the state for governmental purposes, and the legislature possesses absolute power over them. (*Division of Howard Co.,* 15 Kan. 194.) In this respect a county is in the same class with school districts. (*School District v. Board of Education,* post, p. 613.)

If the attention of the legislature of 1921 had been directly challenged to the conditions existing in Wyandotte county, it is not at all improbable that an act would have been passed compelling the county commissioners in counties having a population of 110,000 or over to proceed with the erection of a courthouse which would provide adequate accommodations for the present requirements and which would anticipate the natural growth of the public business. The present courthouse in Wyandotte county was erected in 1882-'83, when the county seat was a country village and the population of the county was less than 25,000; the present population of Kansas City, including Rosedale, is probably 115,000 and that of the county over 150,000. In 1891 the legislature created the court of common pleas of Wyandotte county, with a provision in the act which compelled the board of county commissioners to provide rooms for the new court and for the accommodation of jurors and court officers. From that time until 1913, when the court of common pleas was abolished, the county paid out large sums annually for the rent of outside buildings, inconveniently situated and not adapted to the purpose. Since 1913 there have been three divisions of the district court; and the business of the courts has grown to the extent that another division must soon be provided. There is room in the present courthouse for the first division only. Since their establishment the second and third divisions have been quartered in rooms in buildings leased by the county at considerable expense, which are not suitable for court purposes; these court rooms are poorly ventilated and poorly lighted, and the lack of accommodations and conveniences for officers of the court, jurors, witnesses and that part of the public compelled to attend sessions of the court, would be discreditable in a county of five or six thousand population. In the forty years that have passed since the present building was erected the volume of county business has

expanded to such an extent that it has been found impossible for several years to provide sufficient room in the courthouse to accommodate the other officials of the county and to enable the public business to be transacted with convenience.

There is no merit in the contention that the act violates section 17 of article 2 of the state constitution, which requires all laws of a general nature to have a uniform operation throughout the state. While the act can apply at this time to Wyandotte county alone, it is general in form, and, theoretically at least, applies to a class of counties; that is, it will apply in the future to all counties which attain the population prescribed in the act.

Finally it is claimed that the issuance of these bonds will cause the indebtedness of Wyandotte county to exceed one per cent of the assessed valuation of all property in the county. It is sufficient to say that the act by its express terms provides that none of the restrictions and limitations respecting the amount of county indebtedness contained in any former laws of the state shall apply to or in any manner affect the issuance of bonds authorized by this act. (*Belleville v. Wells*, supra.)

The judgment is affirmed.