## No. 26,421.

The State of Kansas, ex rel. C. B. Griffith, Attorney-general, *Plaintiff*, v. W. L. Russell et al., as the Board of County Commissioners of Morton County, *Defendants*.

### SYLLABUS BY THE COURT.

1. Statutes — *Classification of Counties — Special Laws — Constitutionality.* Chapter 134 of the Laws of 1925 does not violate section 17 of article 2 of the constitution of this state.

2. Counties—*Relocation of County Seat—Petition to Call Election—Number of Electors.* For the purpose of determining whether or not a petition to call an election for the relocation of a county seat has the signatures of the required number of electors, the board of county commissioners must verify the petition by the last complete assessment rolls of real property and the last complete assessment rolls of personal property, and cannot, before reports from all the deputy assessors have been returned, examined and corrected by the county assessor, use the reports of deputy assessors for the current year from some of the townships and cities immediately upon their being filed and the assessment rolls of the previous year from the other townships and cities.

Original proceedings in mandamus. Opinion filed July 11, 1925. Questions of law decided.

---

1. Statutes, 36 Cyc. p. 1003.　2. Counties, 15 C. J. § 77.

*C. B. Griffith,* attorney-general, *W. C. Ralston,* assistant attorney-general, and *A. L. Maltby,* of Elkhart, for the plaintiff; *Clad Hamilton* and *Donald A. Campbell,* both of Topeka, of counsel.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the defendants.

The opinion of the court was delivered by

MARSHALL, J.: This is an original proceeding in mandamus to compel the board of county commissioners to call an election to relocate the county seat of Morton county. On April 6, 1925, a petition for that purpose, purporting to be signed by more than one-half of the electors of that county, was presented to the board of county commissioners. The board refused to call the election.

Two legal questions are presented for determination before taking evidence on the issues made by the pleadings.

1. The first question is the constitutionality of chapter 134 of the Laws of 1925, the act under which the petition was prepared and presented to the commissioners. That act contains the following provision:

"*Provided further,* That in any county having a population of not less than three thousand nor more than thirty-four hundred and fifty people, according to the last preceding census taken by the several assessors of said county, the board of county commissioners shall, upon the petition of one-half of the legal electors of such county, order an election for the relocation of the county seat of any such county, and it shall require a majority of three-fifths of the votes of legal electors cast at such election to relocate the county seat thereof and to move it from such place."

It is contended by the defendants that this portion of the law violates section 17 of article 2 of the constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

In *The State v. Downs,* 60 Kan. 788, 793, the following language was used:

"An act general in its provisions, but which can presently apply to only one city on account of there being but one of requisite population or other qualification, but which was designed to, and can in all substantial particulars apply to other cities as they become possessed of the requisite population or other qualification, cannot be regarded as a special act."

This rule is supported by *Rambo v. Larrabee,* 67 Kan. 634, 73

Pac. 915; *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781; *Clarke v. Lawrence,* 75 Kan. 26, 34, 88 Pac. 735; *Railway Co. v. Cowley County,* 97 Kan. 155, 155 Pac. 18; *Harling v. Wyandotte County,* 110 Kan. 542, 204 Pac. 763.

The classification of the statute under consideration is based on population. The statute may now apply to only one county; next year it may apply to two; in the future it will apply to any county which comes within its provisions. For that reason the statute is general and operates uniformly in all counties to which it applies. It does not violate section 17 of article 2 of the constitution of this state.

2. The second question presented concerns the validity of the action of the board of county commissioners in determining whether or not the petition had been signed by the required number of electors.

· On the morning of the day the petition was filed, but before it was filed, the deputy assessors from some of the townships in Morton county returned to the county clerk the personal-property statements taken by them. Real property was assessed in 1922 and will not be again assessed until 1926. (R. S. 79-402.) The commissioners took the reports that had been filed and the reports of the year previous from the other townships for the purpose of determining whether or not the petition was signed by a sufficient number of electors to compel calling an election. The plaintiff contends that the assessment rolls for the year 1924 should have been used; the defendants argue that the rolls for the townships which had reported for 1925, and the rolls for 1924 from the townships which had not reported in 1925, should be used. This involves a construction of the statutes to ascertain what constituted the last assessment rolls on April 6, 1925, within the meaning of section 19-1604 of the Revised Statutes, which reads:

"For the purposes of this act, the county commissioners shall be governed by the last assessment rolls of the several townships and city assessors of the county, and no petitioner shall be deemed a legal elector unless he be an elector and his name appears on said rolls."

In Morton county the county clerk is the county assessor (R. S. 19-401). He appoints the township trustee of each township as deputy assessor for that township (R. S. 79-1411). No statute has been cited fixing the time when the deputy assessors shall make their reports to the county assessor, and the court has been unable to find

any.   Section 79-408 of the Revised Statutes provides that the deputy assessors shall transmit to the county assessor their field books of the assessment of real property not later than the first day of May, and provides that the county assessor shall deliver all assessment rolls to the county clerk not later than the last business day in May.   Section 79-1602 provides that the board of county commissioners shall meet as a board of equalization on the first Monday in May of each year.   Section 79-1412 in part reads:

"At the close of the assessment period, upon the date provided by law, he [the county assessor] shall make return to the county clerk of all the books returned to him by deputy assessors, and all other returns, lists and schedules pertaining to the assessment, except such files and records as he may be authorized by the tax commission to retain in his office."

That section in part also reads:

"When the deputy assessors shall return to the county assessors any assessment rolls, personal-property statements, or other lists or schedules pertaining to the assessment, it shall be the duty of the county assessor to carefully examine the same and correct all errors discovered therein, in order that the rolls may be properly footed and have proper descriptions of property assessed, so that they may be delivered to the county clerk in perfect condition for the use of the county board of equalization."

It cannot be said that the personal-property statements filed on April 6 constituted the assessment rolls of those townships until after they had been examined and corrected by the county assessor. They could not become the assessment rolls until after they had been examined, corrected, and filed as such.   The county commissioners in examining the petitions for the purpose of ascertaining the sufficiency of the names thereon should have verified them by the last completed assessment rolls for all the townships, those for 1924. (*The State, ex rel., v. Comm'rs of Rawlins Co.,* 44 Kan. 528, 531, 24 Pac. 955.)