No. 27,113.

THE STATE OF KANSAS, ex rel. BURNEY MILLER, County Attorney of Allen County, *Appellant*, v. THE BOARD OF EDUCATION OF THE CITY OF HUMBOLDT; L. F. WILSON, County Treasurer; GEORGE SEYMOUR, County Clerk; FLORENCE ROUND, Superintendent of Public Instruction; and J. C. DAVIS, Sheriff, *Appellees.*

SYLLABUS BY THE COURT.

1. SCHOOLS—*Attaching Adjacent Territory for Revenue Purposes—Bad Faith or Unlawful Conspiracy.* The fact that a board of education of a city of the second class for many years strove to augment its straitened revenues for school purposes by various attempts and endeavors to attach taxable territory from a neighboring school district having a large assessed valuation for school purposes and a small population, and the further fact that the board of education was repeatedly defeated in litigation over its attempts to attach school territory, do not establish bad faith or unlawful conspiracy on the part of the board nor stay its right to prosecute further endeavors to accomplish that purpose pursuant to a later statute broadening the powers of the board to do so.

2. STATUTES—*Title of Act.* Chapter 222 of the Laws of 1925 does not contain two unrelated subjects nor does its title fail to express its subject-matter in violation of section 16 of article 2 of the constitution.

3. SAME—*Uniformity of Operation.* Chapter 222 of the Laws of 1925 does not violate the uniformity clause of the constitution (sec. 17, art. 2).

4. SAME—*Validity—Individual Activity in Persuading Legislation.* It is no constitutional objection to the statute (Laws 1925, ch. 222) that the defendant board and the individuals comprising it may have been instrumental in persuading the legislature to enact it—following *Farmers Coöperative Commission Co. v. Wichita Board of Trade,* 121 Kan. 348, 351, 246 Pac. 511.

5. SCHOOLS—*Attaching Adjacent Territory.* Other objections to the validity of proceedings attaching adjacent territory to a second-class city school district considered and not sustained.

Appeal from Allen district court; ROBERT E. CULLISON, judge. Opinion filed February 12, 1927. Affirmed.

*Burney Miller,* county attorney, *G. E. Pees,* deputy county attorney, *Oscar Foust, John W. Brown, Kenneth H. Foust, Wallace H. Anderson* and *Guy C. Lamar,* all of Iola, for the appellant.

*L. T. Cannon,* of Humboldt, and *Frederick G. Apt,* of Iola, for the appellees.

The opinion of the court was delivered by

DAWSON, J.:   The state brought this action to challenge the

Conspiracy, 12 C. J. p. 547 n. 45.. Constitutional Law, 12 C. J. pp. 885 n. 11, 887 n. 38, 890 n. 39. Schools and School Districts, 35 Cyc. p. 857 n. 29. Statutes, 36 Cyc. pp. 973 n. 10, 993 n. 93, 1010 n. 50, 1017 n. 78, 1022 n. 1, 1026 n. 16, 1043 n. 98; 25 R. C. L. 824.

validity of the annexation of certain lands to the school district territory of the board of education of the city of Humboldt, and to oust the board from the exercise of official powers over the territory involved, and to enjoin the levy and collection of school taxes pursuant to such questioned annexation.

The annexation here questioned is the culmination of many years' effort on the part of the board of education to increase its territory so as to augment its straitened revenues. Most of its endeavors to that end have been to acquire territory from a neighboring school district on the south, No. 17, which enjoys abundant school revenues on a low tax levy because certain large industries, cement plants and oil-tank farms are located within its boundaries.

Prior attempted annexations of territory by the defendant board have precipitated a number of lawsuits, some of which reached this court. (*School District v. Board of Education,* 100 Kan. 59, 163 Pac. 800; *Oil & Gas Co. v. Board of Education,* 112 Kan. 737, 212 Pac. 900.) Other litigation of the same general character was halted in the district court, but in all these lawsuits the result was either a defeat or a drawn battle for the defendant board.

Eventually, however, the legislature of 1925 enacted a statute (chapter 222) which put a new aspect on the situation. That statute, in part, reads:

"SECTION 1. That territory outside the city limits of any city of the second class, but adjacent to the school district of such city, may be attached to said city for school purposes, upon application to the board of education of such city by a majority of the electors of such adjacent territory: *Provided further,* That territory outside the city limits of any city of the second class in a county in which there is situated two or more cities of the second class, but adjacent to the school district of such city, and within one and one-half miles of said city limits, may be attached to such city for school purposes only, whenever in the judgment of the board of education of such city it will be to the best interests of the schools of said city and said territory. . . ."

This statute fitted the Humboldt situation precisely, and pursuant to its terms certain territory adjacent to the city of Humboldt was attached to the city for school purposes by order of the board of education following an application of a majority of the electors residing in the territory concerned. By another order of the board certain other tracts of adjacent territory lying within one and one-half miles of the city limits were attached to the city school district.

To test the validity of these annexations this action was brought.

State, *ex rel.*, v. Board of Education.

The petition recites the history of the various previous attempts on the part of the defendant school board to increase its school territory and the series of lawsuits precipitated thereby. It alleged that within the limits of school district No. 17, adjacent to the Humboldt city school district on the south, a large cement plant is operated, extensive pipe lines converge there, and oil storage tanks of great capacity and much railway trackage and other railway property are located thereabout, all of which constitute the major part of property available for assessment and taxation to maintain the requisite school facilities of school district No. 17.

The petition alleged that the defendant board "coveting the revenue to be derived from taxation" of these properties—

"Wickedly, designedly, purposely and illegally conspired together to detach from said school district No. 17 the lands upon which the last named . . . improvements are located for the sole and only purpose that it, said board of education of the city of Humboldt, might have the revenue to be derived by taxation, thereon."

Here follows a detailed narrative of some ten years' effort of the defendant board to add to its territory and the ensuing litigation, and as the defendants were about to lose another lawsuit—

"Said board of education of the city of Humboldt and the several members thereof in furtherance of their wicked, fraudulent and illegal conspiracy as before averred, and to carry out its covetous purpose of detaching from school district No. 17 the real estate of the Monarch Cement Company, the Prairie Oil and Gas Company and the Prairie Pipe Line Company, and the valuable improvements located thereon thereinbefore referred to, and attach same to said school district No. 16 [Humboldt city district] for the sole and only purpose of realizing revenue therefrom by levy and taxation thereon, with no conceivable benefit to the resident electors on said detached lands, but on the contrary such school district No. 17 would suffer great and irreparable loss and damage if any part or portion of its lands or property within its territorial boundaries were detached therefrom; but that said board of education and the members thereof conceived the idea of having an act of the legislature passed by the legislature of the state of Kansas that would serve their purpose in practically emasculating school district No. 17, and so reducing its revenue from taxation as to render it, said school district No. 17, impossible to maintain its schools in said district in an efficient and proper manner; that to accomplish such purpose, it, said board of education and the members thereof formulated and prepared or had prepared a contemplated statute which they would seek to have passed by the legislature of the state of Kansas, that they did prepare or have prepared such a contemplated statute and have same presented to and introduced in the legislature of the state of Kansas, which said contemplated statute so introduced in the legisla-

ture was in substance passed by the said legislature and such act was approved March 16, 1925, and took effect and was in force from and after its publication in the statute book, to wit: May 1, 1925."

The state also alleged that this statute, chapter 222 of the Laws of 1925, was void in that it contained more than one subject; that the subject was not clearly expressed in its title; that the act was not uniform in its operation throughout the state, all in contravention of article 2, sections 16 and 17 of the state constitution; and "Because said act is arbitrary, unreasonable, autocratic and despotic in its provisions and in contravention of public policy."

Attached to plaintiff's petition were copies of official documents showing the proceedings whereby the questioned annexation of school district territory was effected.

Plaintiff made application for a temporary injunction, and the action was virtually tried on its merits at the hearing thereon. Plaintiff offered in evidence copies of instruments, maps, records and miscellaneous files showing the antecedent efforts of the defendant board to acquire additional school territory and the litigation precipitated thereby and the results thereof. Other evidence in the form of affidavits covered certain features of plaintiff's case.

Defendants' demurrer to plaintiff's evidence was overruled, and affidavits were offered by defendants. One of these was made by the superintendent of the Humboldt city schools. He deposed that the school tax levy in Humboldt was $1.04 on the $100 assessed valuation, and in school district No. 17 it was 70 cents per $100 valuation. That notwithstanding the reduction of its taxable property by reason of the questioned attachment of part of its territory to the city of Humboldt for school purposes, school district No. 17 still has an assessed valuation of $496,580 (even when the storage tanks of its largest taxpayers were empty), which was ample to supply educational revenues and facilities for the small number of pupils within its limits. Other affidavits showed that while the great industrial plants in the vicinity of the city of Humboldt caused a large assessed valuation in school district No. 17, yet the city of Humboldt with its relatively small assessed valuation had to provide educational facilities for 558 pupils, 212 of whom were the children of workmen who were employees in the great industries located in school district No. 17. Until the partial rearrangement of the situation by the attaching of territory which is questioned in this lawsuit, school district No. 17 enjoyed a plethora of revenues be-

cause of location of these industries, and the city of Humboldt suffered a chronic shortage of school revenues because of the mass of children in the city whose fathers worked in these industries.

The trial court overruled the application for a temporary injunction.

The state appeals, and begins its argument by contending that the evidence fairly established the fact that beginning in 1914 and continuing down to the matters which culminated in this lawsuit, the board of education of the city of Humboldt, notwithstanding its changing personnel, had formed and pursued a deliberate conspiracy to strip the adjacent school district No. 17 of a part of its territory which was covered with valuable improvements "for the sole and selfish purpose of obtaining for school district No. 16 [city school district of Humboldt], defendant, the revenue to be derived therefrom by taxation." Without assenting to the characterization of such aims and purposes as a "conspiracy," it rather clearly appears that the board of education has aspired and striven to bring about that result. In so far as the defendant board has attempted to do so in breach of statute its efforts to that end were unavailing. But since the enactment of chapter 222 of the Laws of 1925, it has attained the consummation for which it has striven so many years—if the statute is constitutional, and to the defects urged against its validity we give attention:

Does the statute contain more than one subject? Does the title fail to express clearly the purpose of the statute? The subject matter of the act is to authorize the attachment of territory adjacent to cities of the second class for school purposes. The act says this may be done generally upon application of a majority of the electors of the territory concerned; and in any county which has more than one city of the second class, the board of education of any such city may at its discretion attach for school purposes any territory adjacent to and within one and one-half miles of the city limits without the formality of an application by the electors concerned, "whenever in the judgment of the board of education of such city it will be to the best interests of the schools of said city and said territory." The remainder of the statute covers matters of taxation, and administrative detail resulting from the change in school district boundaries by the exercise of these powers conferred upon the board of education. The act itself is but a paragraph amended

45—122 Kan.

· from time to time which traces back to the general statute of 1876, and of that act and its title this court said:

"Look at the general act of 1876 relating to public education. (Ch. 122) Its title is, 'An act for the regulation and support of common schools.' Under this simple title there lies the entire statutory foundation of our public-school system, covering not only such matters as schools and school districts, and school officers and their duties, but matters so distantly related thereto as the disposition of the federal land grants for school purposes, and including such details as the mode of settlement and acquisition of school lands, duties of the state auditor and governor in relation to the issue of land patents, criminal proceedings and penalties for waste or trespass on school-land properties, etc. But though the title to this act gives no hint of these far-reaching details, yet because they are mere details of the general scheme of the act for the effective regulation and support of common schools, and are germane and pertinent to the principal purpose of the act they are not subject to constitutional infirmity under section 16 of article 2." (*City of Wichita v. Sedgwick County,* 110 Kan. 471, 473, 204 Pac. 693.)

In *School District v. Atzenweiler,* 67 Kan. 609, 73, Pac. 927, an act which provided for the reorganization of depopulated school districts and also provided for the conveyance of pupils to school in all the school districts of the state, was assailed on the ground that it contained two subjects in violation of the constitution. (Art. 2, sec. 16.) The court said:

"The whole act has relation to schools only; no other subject is contained in it. . . . We are of the opinion that the subject of legislation expressed in section 12 is assimilated to the other provisions of the act, and is sufficiently germane thereto to justify the inclusion of both under one title." (p. 611.)

In its discussion of the purpose of this provision of the constitution, the court quoted from the earlier case of *Philpin v. McCarty, Supt., etc.,* 24 Kan. 393, 403, thus:

" 'The intent of this provision of the constitution was to prevent the union, in the same act, of incongruous matters, and of objects having no connection, no relation.' "

See, also, *Shade v. Cement Co.,* 93 Kan. 257, 144 Pac 249; *Swader v. Flour Mills Co.,* 103 Kan. 378, 176 Pac. 143; *State v. Scott,* 109 Kan. 166, and citations, 197 Pac. 1089.

Under these well-considered precedents, chapter 222 of the Laws of 1925 does not violate section 16 of article 2 of the constitution.

Neither can it be said that the statute violates the uniformity clause of the constitution. (Sec. 17, art. 2.) It is the prerogative and duty of the legislature to enact laws to fit the changing, de-

State, *ex rel.*, v. Board of Education.

veloping needs of our people, and the situation of the Humboldt city school district was one which might well receive legislative attention. And it was quite proper for the defendant school board and its personnel, if they chose and if they did, to seek legislative relief. (Bill of Rights, section 3; *Farmers Coöperative Commission Co. v. Wichita Board of Trade,* 121 Kan. 348, 351, 246 Pac. 511.) This statute does not necessarily and exclusively apply to the Humboldt situation. There are many counties in which two or more municipalities have attained to the dignity of cities of the second class, and with the continuing growth of the state the future is bound to see that situation multiplied. Even if the situation of the Humboldt city school district were peculiarly unique at this time, a similar situation could develop anywhere at any time, and a statute framed to fit any such situation as may hereafter arise does not violate the uniformity clause of the constitution. (*Parker-Washington Co., v. Kansas City,* 73 Kan. 722, 85 Pac. 781; *State, ex rel., v. Russell,* 119 Kan. 266, 237 Pac. 877; *Metropolitan Water Co. v. Kansas City,* 164 Fed. 738.)

Because of the all-important fact that school district populations and their needs for educational facilities cannot successfully be put in strait-jackets and compelled to develop within artificial lines and limits, amendments to school laws occupy much of the time of the legislature and fill a very considerable part of our session laws.

It is not easy to see how such numerous and frequent changes in the provisions of our school law can be dispensed with. The act here assailed is not fundamentally different from the common run of statutes which this court has been required to scrutinize time and again in the last half century. In *City of Winfield v. Court of Industrial Relations,* 111 Kan. 580, 583, 207 Pac. 813, it was said:

"The state creates governmental officers and agencies, clothes them with authority, alters that authority, resumes it and imposes it on other functionaries as experience may suggest."

To the other matters urged by the state we have given due attention. The issues of fact were for the determination of the trial court, and these in effect were determined against the plaintiff. The adjectives, "arbitrary," "unreasonable," "autocratic" and "despotic," hurled against the statute take nothing from its potency, and the statute could hardly be held to contravene public policy since the chief arbiter of public policy in this state, under the constitu-

tion, is the legislature itself. The prerogative of this court does not extend to the nullification of a statute which neither offends against our constitution nor the constitution of the United States.

In *Kellogg and another v. Larkin,* 3 Pinney (Wis.) 123, 136, Howe, J., speaking for the court, said:

"As a general rule, the immediate representatives of the people, in legislature assembled, would seem to be the fairest exponents of what public policy requires, as being most familiar with the habits and fashions of the day, and with the actual condition of commerce and trade, their consequent wants and weaknesses." (See, also, *The Union Central Life Ins. Co. v. Champlin et al.,* 11 Okla. 184, 55 L. R. A. 109.)

The fact that the defendant board strove so long and persistently to relieve its chronic financial difficulties in providing adequate educational facilities for its school population, and that its efforts to augment its tax rolls had the consequent effect of diminishing the superabundant tax rolls and revenues of school district No. 17 was neither wicked nor reprehensible (*School District v. Board of Education,* 16 Kan. 536), nor is such an attitude or purpose properly denominated a conspiracy. As was said in *Fairchild v. City of Holton,* 101 Kan. 330, 333, 166 Pac. 503, "it is never unlawful to plan, to do, or set about the doing of anything which the law permits."

The record discloses no error and the judgment is affirmed.