No. 34,654

THE PANHANDLE EASTERN PIPE LINE COMPANY et al., *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MIAMI et al., *Appellants*.

*(99 P. 2d 828)*

Opinion filed March 9, 1940.

*Oliver D. Rinehart,* county attorney, and *Rolla W. Coleman,* of Olathe, for the appellants.

*Garrett Winkler,* of Paola, *W. P. Waggener, O. P. May, B. P. Waggener, Ralph M. Hope,* all of Atchison, *Mitchel J. Henderson, Thomas E. Deacy* and *W. M. Raines,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This action was brought by a number of taxpayers against the board of county commissioners and other county officers of Miami county to enjoin the levy of the tax and the issuance of bonds pursuant to chapter 248 of the Laws of 1939. It stipulated that the defendants were threatening to and would, if not enjoined, levy and collect the tax and issue the bonds. The cause was submitted to the court upon the pleadings and agreed statement of facts. The court rendered judgment for the plaintiffs, and decreed that the defendants be forever enjoined from levying the tax and from issuing bonds under chapter 248 of the Laws of 1939. Defendants appeal.

Under section 1 the act is restricted to counties having (1) a population of more than eighteen and less than twenty-one thousand, (2) having an assessed valuation of more than twenty-two and less than thirty million dollars, and (3) having two cities of the second class having a population of three thousand or more, and (4) counties having adopted the county unit road system, and (5) having benefit-district road systems. .

The section provides that in such counties the county commissioners "shall levy a tax on all tangible and intangible property in said county for the purpose of retiring any and all outstanding benefit-district bond indebtedness in lieu of paying said bond indebtedness by assessments levied against the property in the respective townships in which the benefit-districts are located, and also in lieu of a similar levy against the owners of the property in the various benefit districts as provided for in section 68-706 of the General Statutes of 1935."

Under section 2 the county commissioners are authorized and directed to "reimburse all benefit payments heretofore made" and outlines the procedure to be followed. It contains a limitation of one year as to the issuance of bonds and a limitation of five years in which reimbursements could be made by tax levy.

Paragraph 5 of the agreed stipulation of facts reads:

"That Miami county, Kansas, was at the time chapter 248, Laws 1939, was passed and now is the only county in the state having more than 18,000 population and less than 21,000 population, and an assessed tangible valuation of less than thirty million and more than twenty-two million, two cities of the second class having a population of 3,000 or more, having adopted the county unit system, and having constructed certain benefit-district roads under the provisions of art. 7, ch. 68 of the R. S. Kan. 1923."

In the brief of appellant it is stated:

"There are twenty-six counties in the state that have adopted the unit system. There are forty-seven counties having benefit-district roads. However, there is no county in the state which has all of the required qualifications except Miami county. Allen county comes the nearest to filling all of the requirements, having the right population, assessed valuation, unit system, and benefit-district roads, and two cities of the second class, but fails in that one of the cities, Humboldt, lacks a few hundred having the necessary population of 3,000, its population being 2,402."

Appellees contend that chapter 248 of the Laws of 1939 is unconstitutional for the reason it violates section 17, article 2, as well as other provisions of the constitution.

Does the act violate section 17, article 2, of the constitution? That section provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

Appellants present an acute argument supporting the validity of the act. An outline of the theory advanced may be stated: The first clause of the section 17, article 2, provides that "all laws of *a general nature* shall have a uniform operation throughout the state"; the second clause provides that "in all cases where *a general law* can be made applicable, no special law shall be enacted"; the third clause was adopted by the people at the November election in 1906.

In *Richardson v. Board of Education,* 72 Kan. 629, 84 Pac. 538, decided at the January term, 1906, it was said:

"A law of a general nature is one whose subject matter is common to all the people of the state. Sutherland defines a law of a general nature as follows:

" 'Laws of a general nature are such as relate to a subject of a general nature, and a subject of a general nature is one that exists or may exist throughout the state, or which affects the people of the state generally, or in which the people generally have an interest.' (1 Lewis's Suth. Stat. Con., 2d ed., § 197.)

"General laws are those 'which apply to and operate uniformly upon all members of any class of persons, places, or things, requiring legislation peculiar to themselves in the matters covered by the laws.' (Bouv. Law Dict. 877, '*General Law.*') The difference between a law of a general nature and a general law is that the subject matter of the former must be one common to the people of the entire state, while all that is required of the latter is uniformity of operation.

"Whether or not the subject of an act which is either general or special in form is one of a general nature is always a question for judicial determination. If the subject matter is one of a general nature, the rule that it must be governed by a law which shall have uniform operation throughout the state is mandatory. If, however, the subject matter of the act is one not of a general nature, the law falls under the second subdivision of the constitutional provision, and the question whether it shall be governed by a special or a general law is one that lies wholly within the discretion of the legislature. (*Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915.)" (p. 632.)

Counsel for appellant invoke the Richardson case and assert that prior to the amendment of 1906 this court uniformly held that the first clause of the act "all laws of a general nature shall have a uniform operation" was mandatory; but that whether an act was a general law under the second clause, or a special law, was for the legislature to decide.

Counsel for appellant, in their very able brief, further state:

"The amendment requiring the courts to determine whether or not a given act is repugnant to the section added nothing to the power of the courts in reference to the first clause of the section relating to 'laws of a

general nature.' The courts had always exercised that supervision. It must, therefore, have been intended to apply to the second clause which reads 'and in no cases where a general law can be made applicable no special laws shall be enacted.'

. . . . . . . . . . . . . . .

"Prior to the 1906 amendment it was the province of the legislature to pass upon the relative propriety of a general and special act. Now that function by the amendment has been transferred to the courts. It is the function of this court to decide if a general law accomplishes the purpose without public injury, in lieu of the legislature, which enjoyed that prerogative before as stated in *Rambo v. Larrabee*, supra. The assumption of this duty by the courts is largely responsible for the confusion on this subject, which has naturally and inevitably grown out of a misguided attempt in the amendment to create a justiciable question out of a political one. In too many cases the courts have been compelled to use the rule of the 'Chancellor's Foot.' This court has again and again, as shown by the above-cited decisions, taken judicial notice of facts upon which to base its decision. It had to."

It is also urged that the legislature "has facilities which no court can possibly have for determining the degree of restriction of a given act, especially in reference to its application to large political subdivisions like a county or even a city." In reference to the particular act before us, counsel state:

"In the instant case, it must be assumed that the legislature had before it the representatives of the five counties, having the unit system, and benefit district roads. It must be assumed that presented to it were the peculiar conditions of Miami county, differing from the four other counties. It must have considered the number of benefit-district roads of Miami county, compared with the other counties. Also the particular reasons why the other counties, at this time, did not wish to make the reimbursement; perhaps because of drought, or other economic afflictions which might have been peculiar to them. These must have been considered. Evidence of the importance to Miami county that the reimbursement should not wait, but must be made at this time, in all likelihood was of sufficient force to impress the legislature. Perhaps the universality of the demand, possibly evidenced by petition of the taxpapers [payers] of Miami county may have strongly influenced the legislature. Possible protests filed by taxpayers and the refusal by those taxpayers to pay, alleging the taxes unjust, and the justice or injustice of the complaint may have been and probably were carefully weighed by the legislature."

We have thus attempted to give a fair summary of the arguments advanced in favor of the validity of the act. The argument seems to be that adoption of the amendment by the people in 1906 was a mistake—the amendment being a misguided attempt to "create a justiciable question out of a political one"—that as the legislature has facilities that the court could not possibly have for determining

the degree of restriction of a given act, the matter should be left to the legislature.

The wisdom of the amendment of 1906 is no concern of this court. It was submitted to the people and is a part of the fundamental law of the state. In express terms it imposed on the courts the responsibility of determining whether an act is repugnant to the limitations in the constitution. For this court to declare that it is for the legislature to determine whether an act is a general law or a special law within the meaning of the second clause of section 17, article 2 of the constitution as urged upon us, would amount to nothing less than striking the amendment of 1906 out of the section.

The act before us applies to Miami county alone. This is conceded. There are twenty-six counties in the state that have adopted the unit system, and forty-seven counties that have benefit-district roads. It is conceded that at least twelve counties have both the unit system and benefit-district roads. From a careful reading of the act it appears the main objective was to remedy conditions in counties having benefit-district roads and the unit system. As regards the chief purpose of the act, at least twelve counties have the same attributes and conditions and such counties would seem to form a natural class for the uniform operation of a statute.

A law to be regarded as general must embrace all and exclude none whose conditions and wants render such legislation equally necessary or appropriate to them as a class. A law may be special by being so restricted as not to include all the subjects of a class and also where it excludes subjects of a class from its operation. (*Board of Education v. Davis*, 87 Kan. 286, 123 Pac. 885.)

In *Patrick v. Haskell County*, 105 Kan. 153, 159, 181 Pac. 611, it was said:

"While it is the duty of the courts to uphold laws passed by the legislature, yet it is just as much the duty of the courts to uphold the constitution. If the statute now under consideration be approved, and the principle followed in declaring that approval is observed in the future, the amendment concerning special laws will be of no effect, for the reason that any school district, any township, any city, any county in the state, desiring to accomplish anything not authorized by the general law, can, by the system that has been followed in framing the present act, secure the enactment of a law, general in form, but special in effect, enabling it to accomplish its purpose. Special laws, instead of being direct, will become general in form, but indirectly special, and all the evils of special legislation that brought about the amendment to section 17 of article 2 will be revived."

See, also, our recent cases, *Stevens v. McDowell,* ante, p. 316, 98 P. 2d 410; *Owens v. City of Coffeyville,* ante, p. 263, 98 P. 2d 415.

As stated, the second section of the act contains a time limitation of one year as to the issuance of bonds and a limitation of five years in which reimbursement could be made by a tax levy.

The effect of time limit provisions in an act has been before this court many times. In *Barker v. Kansas City,* 149 Kan. 696, 88 P. 2d 1071, paragraph *d* of the first paragraph of the syllabus reads:

"If a law otherwise general in form and title, and presently applying only to one city or governmental unit, contains a limitation of time in which there can be operations under it, so that there is little or no probability it could or would ever affect any other city or governmental unit, it is a special law."

See, also, *Ashley v. Wyandotte County Comm'rs,* 121 Kan. 408, 412, 247 Pac. 859.

Out of proper respect for a coördinate branch of the government this court has gone far to sustain acts formulated in the language of a general law, even though there has been ground for suspecting the act was intended to operate as a local and special law. All presumptions are in favor of the constitutional validity of a statute. (*Barker v. Kansas, City,* supra.) But in the act before us the presumption of validity cannot prevail because proof to· the contrary is found on the face of its provisions construed in the light of the admitted facts.· No higher duty devolves on this court than to uphold the fundamental law.

We conclude the act violates section 17 of article 2 of the constitution and is void. It is therefore unnecessary to discuss other matters presented in the briefs.

The judgment is affirmed.