No. 34,938

Rural High School No. 6, in Doniphan County, *Appellee*, v. The Board of County Commissioners of the County of Brown, *Appellant*.

(109 P. 2d 154)

Opinion field January 25, 1941.

*Harry E. Miller*, of Hiawatha, for the appellant.

*C. W. Reeder*, of Troy, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to recover tuition alleged to be due as a result of students living in Brown county attending a junior college maintained by the plaintiff in Doniphan county, under the provisions of Laws 1937, chapter 302, the principal question being the constitutionality of that act.

The plaintiff district had filed with the defendant board several claims for amounts of tuition alleged to be due, all of which were rejected. Appeals were taken by the plaintiff to the district court and were consolidated for trial, the trial being had on an agreed statement of facts. So far as need be noticed, it was agreed that plaintiff had complied with the above statute and had maintained its junior college since September, 1938; that all preliminary steps were taken in connection with the certification of names of students by the county superintendents of the two counties involved and the students so attending the junior college were duly qualified to attend; that Doniphan county operates under the Barnes high school law (G. S. 1935, ch. 72, art. 30) and that Brown county does not; that Laws 1937, ch. 302, was duly enacted, and at the time of its enactment plaintiff operated the only junior college in a third-class city in Kansas and that Doniphan county was the only county coming within the requirements of the above act, and that it was the contention of the defendant board the act was unconstitutional. Be-

cause of some contention made that there is discrimination under the statute between students living in Hiawatha and Horton and those within Brown county outside of those two cities, we note that at no place in the record submitted is there any showing as to where any student for whom tuition was claimed may have resided.

The trial court rendered judgment in favor of plaintiff, and defendant appeals, its specifications of error including that the court erred in holding the statute was constitutional and that the tuition claims should be paid from the general fund of the county.

Taking up first the question of constitutionality, we note appellant's contention the act is violative of three sections of the constitution: (1) that it is a special law under article 2, section 17; (2) that the title is not sufficient under article 2, section 16; and (3) that the legislation is repugnant to article 6, section 2, dealing with the encouragement of education. It may be observed that by Laws 1917, chapter 283 (G. S. 1935, ch. 72, art. 33), the legislature made provision for boards of education in first- and second-class cities to extend their courses of study and to maintain what are commonly referred to as junior colleges. The general nature of Laws 1937, chapter 302, was to extend to other school districts such a power and authority. The title of the last act is broad and reads:

"An act relating to education, providing for an extension of the course of study in high schools in certain school districts maintaining a high school in cities of the third class, providing for the issuance of bonds, and authorizing a tax levy to maintain said extension."

The contention the act is a special law and not a general law is based on restrictive matters in the first section under which the power to extend the course of study is limited to the board of directors of school districts maintaining a high school located in a county having a population of not less than 12,000 nor more than 15,700 inhabitants, having no cities of the first or second class, and having within the boundaries of the district a third-class city in which is located a privately-owned junior college. It is agreed that when the act was passed Doniphan county was the only county having a school district within the requirements of the act. Although not specifically shown or admitted, there is no dispute but that at the time the act was passed the plaintiff district, in which was located the third-class city of Highland, and the privately-owned junior college known as Highland Junior College, was the only school district within the terms of the act.

In support of the contention the act is a special and not a general one, appellant calls our attention to *Barker v. Kansas City,* 149 Kan. 696, 88 P. 2d 1071, and to many of the cases there reviewed, and to the later case of *Panhandle Eastern Pipe Line Co. v. Miami County Comm'rs,* 151 Kan. 533, 99 P. 2d 828, in which a further review was made. What is said in those cases need not be reviewed at length, but it is significant that the laws under consideration there, which were held to be special and not general, each contained a limitation of time, a condition not obtaining in the act now under consideration. This court has frequently held that it is its duty to uphold an act of the legislature if possible, but it has also recognized that if an act is repugnant to the constitution it is its duty to declare the act invalid. (See, *e. g., Patrick v. Haskell County,* 105 Kan. 153, 159, 160, 181, Pac. 611, and *Panhandle Eastern Pipe Line Co. v. Miami County Comm'rs,* supra.) The test for determining constitutional sufficiency was set forth in *Barker v. Kansas City,* supra, thus:

"In determining whether a law enacted by the legislature contravenes the provisions of section 17 of article 2 of the state constitution that all laws of a general nature shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable, no special law shall be enacted, the following tests are to be applied:

(a) If a law of general form operates uniformly on all members of the class to which it applies, it is not open to the objection it is a special law if the classification is not an arbitrary and capricious one.

(b) If a law applying to a specified classification of cities or governmental units is otherwise general in its form and its provisions are such that in the ordinary course of things the law might and probably would apply to other cities or governmental units coming within the specified classification, the law is a general and not a special law.

(c) Although the title and form of a law may be general, whether a general or special law has been enacted is to be determined by what in the ordinary course of things must necessarily be its operation and effect.

(d) If a law otherwise general in form and title, and presently applying only to one city or governmental unit, contains a limitation of time in which there can be operations under it, so that there is little or no probability it could or would ever affect any other city or governmental unit, it is a special law." (Syl. ¶ 1.)

Applying that test to the situation before us, we note the title of the act and the restrictive features contained in the first section as above mentioned and consider them in connection with the factual situation. Taking up first the population matter, we note that in 1937 there were fourteen counties in the state within the limits set, of which five had no first- or second-class city, and that in succeed-

ing years there have been thirteen such counties, with the same situation as to cities; that allowing some leeway for probabilities of growth or loss of population in the range between ten thousand and eighteen thousand five hundred, in 1937 there were 36 counties of which nine had no first- or second-class city. It is well known the trend recently has been loss of population and if it continues there may be a considerable number of counties within the range fixed by the act. Taking up the matter of privately owned junior colleges, the public records disclose that in 1937 there were nine such institutions recognized by the state board of education, two being in first-class cities, four in second-class cities and three in third-class cities. The junior college at Highland is the only one whose status has changed except one in a first-class city which seems to have ceased operations. We need not speculate whether there is probability of a privately owned junior college being established in some county otherwise within the purview of the act, nor whether one established or already in existence would desire to surrender its status. We cannot close our eyes to the fact that since 1919 fourteen public junior colleges have been established in Kansas, and that there are now eight private junior colleges, two of which were established in the last ten years and only two of which were established prior to 1908. We cannot say the above act might not and probably would not apply to other school districts, nor what would necessarily be its force and effect, which we would have to conclude before saying the act is repugnant to the state constitution as being a special act. Our conclusion leaves it unnecessary to consider whether we would uphold the act as being a proper special law where a general law could not be made applicable. (See *Eichholtz v. Martin*, 53 Kan. 486, 36 Pac. 1064.)

The contention the act is repugnant to article 2, section 16, of the constitution is based on two grounds. One is the act includes legislation by reference and the reference is vague and ambiguous, and the second is that the matter of tuition is not included in the title. The complaint is directed against section 3 of the act, reading:

"Whenever under existing statutes provision is made for the payment of high-school tuition out of public funds this provision shall hereafter be construed as extending to and covering the payment in like manner of tuition at the same rate for instruction in the high-school extension course of two years, commonly known as a junior college provided for in this act." (Laws 1937, ch. 302, § 3.)

Legislation by reference has been upheld in this state. (See G. S. 1935, ch. 77, dealing with the 1923 revision of our statutes.) We do not think the reference to the statutes for payment of tuition is vague or ambiguous. It is true there are a number of such statutes, but they refer to particular situations and are only effective where those situations obtain. If one or more of them do obtain in the relation between Brown and Doniphan counties, their application would seem to be certain. As the agreed statement does not show the local situation of any particular student or students, we are unable to show application of any particular tuition act, and no good purpose is to be subserved by reviewing each one that might apply under a given state of facts. We think, also, that the title of the act is broad enough to cover the provision as to the payment of tuition.

Our attention is also directed to article 6, section 2, of our constitution, reciting—

"The legislature shall encourage the promotion of intellectual, moral, scientific and agricultural improvement, by establishing a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university departments"—

as well as to statutes dealing with liability for tuition, and it is argued there is lack of uniformity in the manner of admission and the liability for tuition between students residing in cities of the first and second classes, and students residing in other types of school districts. Without reviewing all of the statutes applicable, it may be said a classification is made which does not appear to be arbitrary or unreasonable. Giving effect to that classification, the act operates uniformly on all members in particular classes. The question of uniform operation has usually arisen under article 2, section 17, of our constitution, and it has been generally held that where a classification made is not unreasonable or capricious, if the act applies to the various classes uniformly, it is of uniform operation. (*Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915. See, also, 59 C. J., p. 722, *et seq.,* and Kansas cases cited.) Applying such analogy as there may be, and also considering the constitutional provision with respect to education, any system of schools would be a uniform system if it applied to all of a class which was not arbitrarily or capriciously established.

And finally, appellant argues the trial court erred in holding the tuition should be paid from the general fund. In connection therewith, our attention is called to certain statutes, some of which make

the school district liable for tuition, and others of which make the county liable. As has been stated, the record does not disclose the particular residence of any pupil for whom tuition is due. We may assume from the record that the trial court rendered judgment against the county only in those instances where it was liable and in no instance where it was not. The judgment as rendered did not direct payment out of any particular fund, general or otherwise. It merely adjudged the amount due and directed the clerk of the court to certify the judgment to the defendant board and that board to allow and pay the tuition charges so placed in judgment. Upon allowance of those charges by the defendant board, it will direct that they be paid from the proper fund.

We conclude the trial court did not err, and its judgment is affirmed.

Hoch, J. (dissenting): Being unable to concur in the majority view, the reasons for my dissent will be briefly stated. The statute under scrutiny purports to enable the board of directors of any school district of a certain class to provide two years of college work and to issue bonds for the purchase or erection of buildings for that purpose. However, in order for a district to come within the act, all the following conditions must exist:

(1) It must maintain a high school;

(2) It must be located in a county having a population not less than twelve thousand and not more than fifteen thousand seven hundred;

(3) It must not have within its boundaries a first-class city;

(4) It must not have within its boundaries a second-class city;

(5) It must have within its boundaries a third-class city in which is located a junior college;

(6) Such junior college must be privately owned and operated.

It seems clear to me that the statute is special in character, intended and understood to apply to only one district in the state.

It is agreed by the parties that when this statute was enacted in 1937 the plaintiff school district had within its boundaries the only third-class city in Kansas having a privately owned and operated junior college, and that it is the only district to which the act has at any time applied. The majority opinion takes up one by one the conditions precedent to applicability of the act. As to population it points out that in 1937 there were fourteen counties within the

population limits, but that since then the number has dropped to thirteen; five of these counties have no first- or second-class cities. But it is not contended that any of these five counties has at any time had a third-class city in which is located a junior college, much less one which is privately owned and operated. The majority opinion states that in 1937 there were nine such institutions in the state, but that now there are only eight. From these facts it would appear, therefore, that there is actually less probability now than when the statute was enacted that there will be another school district which exactly fits, in all its various details, the specifications of the statute. Nor does the argument seem persuasive to me which merely considers each of the conditions *seriatim* for the purpose of showing that it cannot be regarded beyond the realm of probability that it will be met by other districts. The real question is whether it can reasonably be said that the legislature had in mind that all the conditions would probably obtain contemporaneously in other school districts and enacted the statute with such probability in mind. Too much credulity is called for, it seems to me, to think that the statute was not framed for the purpose of affecting one school district in Kansas—the only one then existing or at all likely to exist.

Highland College, here involved, and the only college to which the act has ever applied, is a fine historic Kansas institution whose interests have an appeal to all of us. The desirability of the enactment, in relation to it, is not here in issue, nor is any question of good faith presented. But it should be remembered that article 2, section 17, of the constitution, here involved, *does not prohibit all special legislation.* It only prohibits the enactment of a special act in cases *"where a general law can be made applicable."* If a local situation exists which properly calls for legislative attention and the particular facts make a general law inapplicable, there is no reason why it should not be openly and frankly presented as such, and there is nothing in the constitution which would invalidate it simply because it is special in character. (*State, ex rel., v. Wyandotte County Comm'rs,* 140 Kan. 744, 42 P. 2d 46.)

The majority opinion does not uphold the instant statute on the grounds that while it employs terms general in character it is plainly intended to be a special act and therefore valid. (See *Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915.) On the contrary, the opinion interprets the statute to be a general act, that issue being one for judicial determination. (Const., art. 2, sec. 17.)

The constitutional prohibition of special acts enacted under the guise or disguise of general acts was intended to prevent a very bad legislative practice which is fraught, as this court has many times pointed out, with many public evils. With all respect for the views of the majority, the effect of the decision, in my opinion, is to lower the bar of the constitution and to contribute, however unintentionally, to that sort of practice.