No. 37,816

THE STATE OF KANSAS, *ex rel.*, WARREN W. SHAW, County Attorney of Shawnee County, *Plaintiff*, v. THE CITY OF TOPEKA, a municipal corporation: FRANK J. WARREN, Mayor; HARRY SNYDER, Commissioner of Parks; C. MADISON WILLIAMS, Commissioner of Streets; LLOYD SMITH, Commissioner of Water; J. GLEN DAVIS, Commissioner of Finance, *Defendants*.

(215 P. 2d 644)

Opinion filed February 28, 1950.

*Warren W. Shaw*, county attorney, and *Lester M. Goodell, Margaret Mc-Gurnaghan, Frederick A. Mann*, and *George M. Brewster*, all of Topeka, were on the briefs for the plaintiff.

*Frank P. Eresch*, city attorney, and *Peter F. Caldwell*, assistant city attorney, were on the briefs for the defendants.

The opinion of the court was delivered by

WEDELL, J.: This original proceeding, in the nature of quo warranto, was instituted by the state, on the relation of the county attorney of Shawnee county, to test the validity of chapter 262, Laws 1939 (G. S. 1947 Supp. 72-1757). The act reads:

"AN ACT relating to elections by boards of education in cities of the first class and providing for the cost of such elections.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. The expense of all elections held for school purposes in cities of the first class having a population of more than 70,000 and less than 100,000, shall be paid by the board of education of such city, except that when an election is held for both city and school purposes at the same time, then the expense shall be paid in equal parts by the city and board of education.

"SEC. 2. This act shall take effect and be in force from and after its publication in the statute book."

Various facts are stipulated. The stipulation discloses the population of the city of Topeka was 73,655 at the time of the 1941 elec-

tion, the first year the city held an election to which the act applied; 68,938 in 1943; 76,188 in 1945, the year there was no election of school board members in the school district (see ch. 133, laws 1945); 79,154 in 1947 and 87,001 in 1949.

The school board paid one-half of the election expenses in 1941 and 1947, the two years during which school board elections designated by the act were held prior to 1949. In May, 1949, the city billed the board of education for one-half of the 1949 election expenses. The latter refused to pay and authorized its attorney to institute legal proceedings to establish it was not liable for such expenses. This action followed.

It was also stipulated the populations of other cities in 1939 nearest in population to the city of Topeka were as follows: Hutchinson, 32,263; Kansas City, 149,342, and Wichita, 111,718. In 1949, ten years later, the population of those three cities was Hutchinson, 31,814, Kansas Ctiy, 176,413, and Wichita, 185,134. It will be observed the population of the city of Hutchinson remained substantially the same from 1939 to 1949 while the population of Kansas City increased 27,071 and that of Wichita 73,416.

Plaintiff emphasizes the fact that during such ten year period the act was operative only as to elections in the city of Topeka. Plaintiff contends (1) the act contravenes article 2, section 17, of our state constitution for the reason it has no uniform application among cities generally, or cities of the first class; and (2) the classification, based on the designated population bracket, is not germane to the purpose of the act and constitutes an unreasonable and arbitrary classification. That constitutional provision reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

In support of the contention plaintiff relies primarily on *State, ex rel., v. Wyandotte County Comm'rs*, 161 Kan. 700, 171 P. 2d 777, and cases therein cited; *Carson v. Kansas City*, 162 Kan. 455, 177 P. 2d 212 and *City of Kansas City v. Robb*, 164 Kan. 577, 190 P. 2d 398. The reader is referred to the facts and statutes involved in those cases. We think those cases due to dissimilarity of facts and statutes involved are not controlling in the instant case. They will be considered later.

The instant act applies to elections in all cities described in the designated classification. The act has a uniform operation within the designated class. In other words the act applies uniformly to elections in every city now within, or which may hereafter come within, the population limitations of the act. It is, therefore, a general and not a special law. (*Beck v. Shawnee County,* 105 Kan. 325, 182 Pac. 397; *Harling v. Wyandotte County,* 110 Kan. 542, 546, 204 Pac. 763; *Rural High School v. Brown County Comm'rs,* 153 Kan. 49, 51-53, 109 P. 2d 154.)

The mere fact that under circumstances existing at the time a statute is enacted it applies to only one city, one county or one school district, does not mean the act is a special law and, therefore, violates article 2, section 17, of our constitution, if it is reasonable that in the ordinary course of things other governmental units may come within the operation of the act. A few of the cases so holding are: *State v. Downs,* 60 Kan. 788, 793, 794, 57 Pac. 962; *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781; *Baird v. City of Wichita,* 128 Kan. 100, 104-105, 276 Pac. 77; *Harling v. Wyandotte County,* 110 Kan. 542, 546, 204 Pac. 763; *State, ex rel., v. Board of Education,* 122 Kan. 701, 707, 253 Pac. 251; *Rural High School v. Brown County Comm'rs,* 153 Kan. 49, 50, 109 P. 2d 154.

Was the classification based on population invalid? As applied to various subjects we have held a classification based *solely* on one population requirement does not constitute special legislation and does not contravene article 2, section 17, of our constitution. Some of the cases are: *State v. Downs, Parker-Washington Co. v. Kansas City, Harling v. Wyandotte County,* omnia supra; *State, ex rel., v. Russell,* 119 Kan. 266, 237 Pac. 877; *State, ex rel., v. Kansas City,* 125 Kan. 88, 262 Pac. 1032; *State, ex rel., v. North Wichita Drainage District,* 127 Kan. 207, 272 Pac. 177; *Baird v. City of Wichita,* supra; *Connolly v. Bourbon County Comm'rs,* 128 Kan. 452, 278 Pac. 714; *State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618; *State, ex rel., v. Kansas City,* 134 Kan. 157, 4 P. 2d 422.

It is important to bear in mind the instant act is not based on a number of qualifying factors but only on the single requirement of the city's population. The instant case is unlike *Berentz v. Comm'rs of Coffeyville,* 159 Kan. 58, 152 P. 2d 53, in which there was not only a city population requirement but also a requirement that the city be located in a county having a population of more than 47,000 and less than 51,000, thus making it highly improbable any other city

could ever qualify under the act. The present case also differs widely from *State, ex rel., v. Wyandotte County Comm'rs, Carson v. Kansas City,* and *City of Kansas City v. Robb,* omnia supra, in which it clearly appeared the acts involved were special for the reason they contained two qualifying factors, one being a stated population and the other property of specific assessed valuation for tax purposes. Nor is *Barker v. Kansas City,* 149 Kan. 696, 88 P. 2d 1071, controlling here. While the act in that case was based only upon a city's population of 120,000 or more it gave other cities only two years after its passage to qualify. Other cases relied on by plaintiff are of similar import to those just distinguished from the case before us.

The instant act is also challenged on the ground it contravenes article 12, section 1, of our constitution which reads:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

It does not appear the purpose of the instant act was to confer corporate powers. Rather it was a direction to pay designated expenses. In any event, having held the act is a general law, article 12, section 1, of the constitution does not apply. That constitutional provision prohibits only the conferring of corporate powers by a *special* act.

The constitutionality of acts involving various subjects has been challenged frequently under article 2, section 17, and article 12, section 1. We do not deem it necessary to quote extensively from the various cited cases holding a classification based *solely* on a single population requirement is not *special* legislation unless it clearly appears it could not in the normal progress of events become applicable to any other city, county, school or other subject to which the act pertains. One quotation will suffice to illustrate the often repeated rule. The 1929 decision in *Baird v. City of Wichita,* supra, involved a street widening and paving statute enacted in 1921. It applied to cities of the first class having a population of more than 95,000. When enacted only Kansas City qualified thereunder. This court said:

"Another objection to the act is based upon its being limited to cities of more than 95,000 population, but that classification is manifestly not unreasonable. Under the inhibitions of our state constitution it was and is impossible to confer corporate power upon a single city by special act (art. 12, § 1), yet of necessity our leading metropolis, Kansas City, does require much legislative attention not demanded by smaller municipalities, so a classification of

cities is resorted to, quite properly, which satisfies the constitutional requirements of article 2, section 17, and article 12, section 1, although but one city may come within the legislative classification at the time the statute is enacted. This was precisely' the situation when R. S. 13-1041 was enacted in 1921. At that time only Kansas City had more than 95,000 population. But now the city of Wichita has grown into the same class, and doubtless Topeka will attain thereto ere 'long. *With the passing years there is no reason to doubt that other Kansas towns will reach the same standard."* (p. 104.) (Our italics.)

The statement in the Baird case was correct. Since the passage of the 1921 act there involved the city of Topeka attained a population of 89,810 in 1949. In view of its rapid growth it may soon far exceed the population of 95,000 required by the 1921 act involved in the Baird case. So in the present case we have no reason to doubt that in the passing years cities other than Topeka will reach the population· of 70,000 required under the instant act. The act contains no limitation of time within which other cities may qualify.

Plaintiff argues general laws pertaining to election expenses were in effect prior to the enactment of the instant statute and that such fact is proof a general law could be made applicable and, therefore, a special law could not be enacted. We have already indicated this is not a special law. The fact some general laws previously may have been in force does not constitute a legislative bar to the enactment of a subsequent general law on the same subject.

Defendant argues the instant act is a school law and cites decisions of this court in which it has been held such laws are to be liberally construed in favor of constitutionality. It appears the subject of the act is one pertaining to elections in first class cities and to a division of the expenses thereof rather than to the subject of education. We need not, however, determine that contention. In view of what already has been said it is unnecessary to seek additional reasons for sustaining the constitutionality of the act.

A great many city and county laws based on a single population requirement have been enacted pursuant to our earlier decisions. The validity of most, if not all, of them would be rendered highly doubtful under a contrary decision in the case before us.

'We think the act is not invalid on any ground asserted. The writ is denied.